```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5        Plaintiff,                  )  No. 20-CR-3445-LAB
                                      )
 6             v.                     )  August 5, 2021
                                      )
 7   MANUEL VASQUEZ-PEREZ,            )  9:03 a.m.
                                      )
 8        Defendant.                  )  San Diego, California
     _____)

 9

10               TRANSCRIPT OF JURY TRIAL - DAY 2
             BEFORE THE HONORABLE LARRY ALAN BURNS
11                UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:     UNITED STATES ATTORNEYS OFFICE
                            By:  MICHAEL DESHONG, ESQ.
14                               VIVIAN SAPTHAVEE, ESQ.
                            880 Front Street
15                          San Diego, California  92101

16   For the Defendant:     FEDERAL DEFENDERS OF SAN DIEGO, INC.
                            By:  LAUREN J. CLARK, ESQ.
17                               BRITTANY SHERRON, ESQ.
                            225 Broadway
18                          San Diego, California  92101

19   Court Interpreter:     DAN DECOURSEY; EDITH MONROY

20   Court Reporter:        CYNTHIA R. OTT, RDR, CRR
                            District Court Clerk's Office
21                          333 West Broadway, Suite 420
                            San Diego, California, 92101
22                          cynthia_ott@casd.uscourts.gov

23

24

25   Reported by Stenotype, Transcribed by Computer
```

1                          I N D E X

2                                                        PAGE

3    CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT
     MS. SAPTHAVEE...................................... 13
4    CLOSING ARGUMENT BY COUNSEL FOR THE DEFENDANT
     MS. SHERRON....................................... 20
5    REBUTTAL CLOSING ARGUMENT BY COUNSEL FOR THE
     GOVERNMENT -- MR. DESHONG......................... 28
6

7                        E X H I B I T S

8                                                        PAGE

9    Court Exhibit 1 was marked for identification....... 47

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              SAN DIEGO, CALIFORNIA, AUGUST 5, 2021, 9:17 A.M.

 2                                * * * *

 3              THE CLERK:  Calling number 1 on the calendar,

 4    20-CR-3445, United States of America versus Manuel

 5    Vasquez-Perez.

 6              If counsel could state their appearances for the

 7    record.

 8              MS. SAPTHAVEE:  Good morning, Your Honor.  Vivian

 9    Sapthavee on behalf of the United States.

10              THE COURT:  All right.  Good morning.

11              MR. DESHONG:  And good morning, Your Honor.  Michael

12    Deshong for the United States as well.

13              THE COURT:  Good morning.

14              MS. SHERRON:  Good morning, Your Honor.  Brittany

15    Sherron on behalf of Mr. Vasquez-Perez.

16              THE COURT:  All right, Ms. Sherron.

17              MS. CLARK:  Lauren Clark for Mr. Vasquez-Perez.  Good

18    morning, Your Honor.

19              THE COURT:  Good morning, Ms. Clark.  Ladies and

20    gentlemen, we worked after we recessed yesterday to complete

21    the instructions and I have those here.  I mentioned yesterday,

22    I'm required to read these instructions in open court.

23              I'm not sure what the origin of that requirement is,

24    but I think it has to do with the centrality of the

25    instructions and your finding of facts being essential to
```

```
 1    reaching a verdict in this case.

 2             I just do what I'm told.  And what I'm told to do is

 3    to read the instructions in open court.  You'll also get this

 4    very package of instructions to consult during deliberations.

 5             As I mentioned to you, the instructions can be broken

 6    into two parts, two segments.  I'll give you the bulk of the

 7    instructions now.  You'll then hear from the lawyers.  And then

 8    the last five instructions have to do with the process of

 9    deliberation.  I'll give you those right before we submit the

10    case to you.

11             Members of the jury, now that you've heard the

12    evidence in this case, it's my duty to instruct you on the law

13    that applies.  It's your duty, as jurors, to weigh and evaluate

14    all of the evidence that's been received in this case.  And in

15    that process, to decide what the facts are.  We're having this

16    trial because the parties have different views on what the

17    facts are, or alternatively, different views on what inferences

18    and conclusions should be drawn from those facts, and the 12 of

19    you must resolve that and agree on the facts.

20             Once you do that, it's your duty to then apply the law

21    as I give it to the facts as you find them.  And you have to

22    apply the law, whether you agree with it or not.  That's why we

23    took pains yesterday to ask people whether they have had strong

24    feelings that would control the outcome of this case,

25    irrespective of the facts and the existing law.  You have to
```

1   decide the case solely on the basis of the evidence presented

2   here and the law as I give it to you.

3          You should not allow such things as personal likes or

4   dislikes, sympathy, prejudice, fear, or public opinion to

5   influence you in reaching a decision.  Likewise, you shouldn't

6   be influenced by such things as a person's race or national

7   ancestry, gender, profession, position in the community.

8          Each of you took an oath yesterday promising to decide

9   the case fairly and objectively, based on evidence and the law.

10  And you have to be faithful to that oath as you begin

11  deliberations.

12         You should follow all of these instructions.  Don't

13  single out some and ignore others.  All of the instructions are

14  important.

15         And, again, I remind you not to read into anything

16  I've said or done during the course of the trial, including

17  these instructions, what verdict you should return.  That's a

18  matter that's exclusively up to the 12 of you.  I read to you

19  yesterday from the indictment, which is the formal accusation

20  of criminality that the government has lodged against the

21  defendant.  The indictment is not evidence.  It's just a way of

22  framing what the accusation is.

23         The defendant has pled not guilty to the charge and

24  he's presumed to be not guilty unless the government proves his

25  guilt beyond a reasonable doubt.  In addition, the defendant

1    doesn't have to testify or present evidence to prove his

2    innocence.  Instead, as I've mentioned several times throughout

3    the case, the burden is on and remains with the government to

4    prove every element of the charge beyond a reasonable doubt.

5            The defendant in a criminal case has a constitutional

6    right not to testify.  In arriving at your verdict in this

7    case, the law prohibits you from considering in any manner that

8    Mr. Vasquez-Perez did not testify here.

9            I want to remind you, again, that there are three

10   forms of evidence on which you're to base your findings of

11   fact.  It includes sworn testimony.  We've had that.  It

12   includes things that are received in evidence as exhibits.  We

13   have those.  And finally, it includes facts to which the

14   parties have stipulated and agreed.  And you heard yesterday

15   the government recite four facts.  The defense said we don't

16   contest those things, so you may find those things true without

17   the necessity of additional proof.  Those are the three forms

18   of evidence.  We've had all three in this case.

19           In contrast, remember, these things are not evidence.

20   Questions put by the lawyers to witnesses, statements by the

21   lawyers, whether in opening statement or what they'll say to

22   you in closing argument, objections, arguments by the lawyers.

23   None of those things is evidence.

24           As you heard me point out yesterday, this goes back

25   to, what, October of last year, and we didn't hear a word about

1    where the lawyers were on that day.  And I doubt they were in

2    the area where this encounter took place, and the facts giving

3    rise to the accusation began.

4              Again, I don't say that to disparage the lawyers, but

5    I think it's useful to remember that they're in a position

6    similar to yours.  They've had access to information.  They've

7    talked to witnesses.  They've read reports.  They've become

8    familiar with a case, but they've done so in a secondhand

9    version.  They've heard from people that did have connection,

10   just as you have.  So keep that in mind.

11             I haven't stricken any testimony, so that doesn't

12   apply.  And I think we've moved at a pretty efficient pace, so

13   I doubt anybody heard or saw anything when court wasn't in

14   session that is likely to influence the case.  But if you did,

15   remember that the case must be decided on what was presented

16   here while we were in session.

17             You heard testimony in this case that the defendant

18   made statements.  It's for you to decide whether he made the

19   statements, and if so, how much weight to give them.  In making

20   those decisions, you should consider all of the evidence about

21   the statements, including the circumstances under which they

22   were made.

23             You heard testimony yesterday from a witness,

24   Ms. Torres, who offered opinions on handwriting comparison --

25   I'm sorry, on fingerprint comparison, and gave reasons for her

1 opinions.  Opinion testimony is allowed because the witness has

2 special education or experience that qualifies the person to

3 give an opinion on a particular subject.

4 Opinion testimony should be judged by you, like all

5 the other testimony.  You can accept it or reject it.  You give

6 it whatever weight you think it deserves, in light of the

7 witness's education and experience, the reasons that the

8 witness gives for the opinion, and all of the other evidence

9 presented in the case.

10 I want to go over this with you again.  Remember that

11 as judges of the facts, it's your exclusive duty to determine

12 credibility of witnesses.  As I mentioned yesterday, you can

13 believe everything a witness says, or part of it, or none of it

14 at all.

15 And keep in mind these factors, common sense factors,

16 as you think about witness testimony and decide how much weight

17 it deserves.  Ask yourself what opportunity, what ability did

18 the witness have to see, or hear, or know the things that the

19 witness testified about.  What was the state of the witness's

20 memory?  Did the witness display any mannerisms during

21 testimony that caused you to either think, well, really telling

22 the truth?  Or, you know, maybe not so sure about things.

23 Ask yourself, does a witness have any obvious interest

24 in the outcome of the case, or any obvious bias or prejudice.

25 Is there other evidence that contradicts what the witness said,

1    or alternatively, is there other evidence that supports what a

2    witness said.

3            Again, I remind you that you're here because you're

4    perceived to be reasonable people with common sense, good

5    judgment, experience.  And we want you to apply those things.

6    So as to evidence and witness testimony, in particular, ask

7    yourself how reasonable does this seem to me, in light of

8    everything that I know.

9            It's true that a witness may sometimes say something

10   that is not entirely consistent with something he previously

11   said.  Sometimes different witnesses also give different

12   versions of things.  That's not uncommon.  People often forget

13   things and make mistakes about what they remember.  And it's

14   also true that two people seeing the same event may see it

15   differently.

16           There may be slight differences.  And you should

17   consider the differences, the inconsistencies, but don't decide

18   testimony is untrue just because it differs from other

19   testimony.

20           On the other hand, if you think that a witness

21   deliberately falsified something, deliberately testified

22   untruthfully about something important, then you can choose to

23   believe nothing that that witness says, or if you think the

24   witness testified untruthfully about some things, but told the

25   truth about others, you can accept the part that you believe is

1    true, and reject the rest.

2           I remind you also that the weight of the evidence as

3    to a fact doesn't turn on how many witnesses testify to that.

4    You can be convinced by the testimony of a single witness.

5    Likewise, you can reject the testimony of multiple witnesses if

6    you don't find it to be reliable.  What's important is how

7    believable the witness is, and how much weight you think his or

8    her testimony deserves.

9           From the beginning, I told you that the standard of

10   proof in this case is what we call proof beyond a reasonable

11   doubt.  Here's how the law defines that standard of proof.

12   Proof beyond a reasonable doubt is proof that leaves each of

13   you firmly convinced that the defendant is guilty.

14          The government is not required to prove guilt beyond

15   all possible doubt.  Rather, a reasonable doubt is a doubt

16   that's based on reason and common sense, and not based purely

17   on speculation.  Reasonable doubt may arise from your careful

18   and impartial consideration of all of the evidence, or

19   alternatively, it may arise from a lack of evidence.  If after

20   you've carefully and impartially considered the evidence in

21   this case, you're not convinced beyond a reasonable doubt that

22   the defendant is guilty, you must find him not guilty.

23          On the other hand, if after carefully and impartially

24   considering all of the evidence, you are convinced beyond a

25   reasonable doubt that the defendant's guilty, it is your duty

1   to find him guilty.

2          Now to the charge.  You remember the metaphor I used

3   yesterday, that criminal charges are broken up into elements

4   like the ingredients on a cake box, flour, eggs, water, so on.

5   It's been a long time, since college, I think, since I baked a

6   cake, but I do remember those ingredients being on the side of

7   the box.

8          So it is with these criminal charges.  And I'll read

9   you now what the elements are of this offense of being found in

10  the United States after being removed.

11         The defendant is charged in the indictment with being

12  an alien, who after being deported and removed from the United

13  States, was found back in the United States.  If this is true,

14  it's a violation of United States Code.

15         To find the defendant guilty of this charge, the

16  government has to prove the following elements beyond a

17  reasonable doubt.  First, they have to prove that sometime

18  before the date charged in the indictment, which is October

19  20th, correct, 2020?

20         MR. DESHONG:  That's correct, Your Honor.

21         THE COURT:  Sometime before October 20th, 2020, the

22  date of the offense charged here, the defendant had been

23  removed from the United States.  In other words, he'd been

24  deported from the United States sometime before that date.

25         Second, thereafter, after being deported, the

1    defendant voluntarily reentered the United States.

2         Third, at the time the defendant entered the United

3    States, he knew where he was.  He knew he was entering the

4    U.S., or after he was in the United States, he knew he was

5    here, and knowingly remained within the United States.

6         Fourth, at the time the defendant was found in the

7    United States, he had not obtained permission, official

8    permission from the United States Government, that is, more

9    specifically, he hadn't received consent from the Attorney

10   General or the Secretary of the Department of Homeland Security

11   to reapply for admission to the United States.  One has to

12   apply, and then be granted admission, and the government must

13   prove here that he did neither.

14        Fifth, the government must prove that the defendant

15   was an alien at the time of his entry into the U.S.  We've told

16   you this several times.  It's not a pejorative term or a term

17   of derision.  It's a legal term under the United States Code.

18   An alien is someone who's not naturally born here in the United

19   States or naturalized as a citizen.

20        And then, finally, the government has to prove that

21   the defendant was free from what is called official restraint,

22   which means that he was not, while in the United States after

23   entering the United States, not deprived of his liberty or

24   prevented from going at large within the population, within the

25   country here.

1            In other words, to be under official restraint means

2    that the defendant was under constant government observation

3    from the moment he first crossed the border and entered into

4    the United States until the moment of his apprehension.  That's

5    what's meant by official restraint.  Somebody is watching you

6    the entire time after you enter and until you're apprehended.

7            That a person has been deported in the past, by

8    itself, is not sufficient to prove that the person's an alien.

9    However, evidence that a person has been deported in the past

10   may be considered by you in conjunction with all of the other

11   evidence in determining whether the person is an alien.

12           So those are the bulk of the instructions.  As I said,

13   there's about five left that have to do with the process of

14   deliberation.

15           The lawyers gave me an estimate yesterday that they

16   would take no more than 20 minutes.  And I'll, I guess, keep

17   tabs on that, remind them if they're getting close to their

18   estimate.

19           The government goes first, and then they have a chance

20   to respond.  So the government will have the ability, at least

21   the opportunity to address you twice.  And then the defense

22   will address you in between the government's arguments.  Please

23   give them your respectful attention.

24           CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT

25           MS. SAPTHAVEE:  When Mr. Vasquez chose to sneak into

1   the country and travel five miles through mountainous terrain,

2   he knew he wasn't supposed to be out there.  After all, he had

3   just been deported eight days before that, and that wasn't the

4   first time he was deported either.

5          But he decided to come back into the country, where he

6   had no legal right to be.  And that's why, when agents were

7   closing in on him, he ducked into a bush and he hid.

8          Let's take a look at the video.  Now, that grainy

9   figure you see coming down that hill on the side, that's the

10  defendant.  And right there, he hides.

11         Now, when agents finally found him out there after a

12  long search, he admitted right away that he was a Mexican

13  citizen with no documentation allowing him to be there, and

14  that he knew he was here illegally.

15         And of course he admitted that, because he had already

16  admitted as much just eight years ago in July 2012.  And that

17  time, he did it under oath.  That's why we're here today.

18         Now, yesterday, you heard a lot of testimony.  And you

19  saw all kinds of evidence.  And this morning, we're going to

20  walk through how all of that evidence proves beyond a

21  reasonable doubt that the defendant is guilty as charged.

22         Now, you heard Judge Burns talk about the elements or

23  the ingredients that make up the offense.  Here's a list that

24  summarizes those ingredients.  First, that the defendant has

25  been removed or deported before.  Second, that he voluntarily

1   came back into the United States.  Third, he knew he was in the

2   United States and wanted to stay.  Fourth, he was found without

3   permission to come back.  Fifth, he was an alien, or in other

4   words, not a U.S. citizen when he entered the United States.

5   And finally, he was free from official restraint.  Now, I know

6   that looks complicated, but we'll walk through all the

7   evidence.  And I'll show you how the evidence proves each and

8   every one of those items.

9        And we'll even group some of those together to

10  streamline the process a little bit.  So first, the evidence

11  shows that the defendant is a removed alien, and he didn't have

12  permission to come back.  The immigration documents prove it.

13  This document shows that on October 12th, 2020, he was deported

14  just eight days before he showed up again this time.  And as

15  Judge Burns says, the fact that he was deported doesn't in

16  itself prove that he's an alien, but it sure indicates that he

17  was, because he wouldn't have been deported otherwise.

18       Now, Officer Pena testified that he watched the

19  defendant with his own eyes walk across a bridge from

20  Brownsville, Texas back into Mexico.  Ms. Torres' testimony

21  showed that that fingerprint belongs to the defendant.

22       Now, we're going to ask you to make a special finding

23  as well, that the defendant was deported sometime after

24  November 1st, 2016.  And that last document proves that,

25  because October 2020 comes after November 2016.

1          But that wasn't the only time he was deported.  This

2    document shows that way back in 1997, an immigration judge

3    ordered the defendant deported after a hearing in Arizona.

4    This is the top half of a document that shows that he was, in

5    fact, deported on April 10th, 1997.  And as you can see from

6    the bottom left part of that document, someone watched him

7    leave.

8          This is the bottom half of that document.  You can see

9    the defendant's photograph as a younger man over 20 years ago.

10   And again, that fingerprint, according to the expert testimony,

11   belongs to the defendant.  So those documents prove that the

12   defendant is a deported alien without permission to be here, at

13   least at that time.

14         And you don't have to rely just on the documents.  You

15   can look at the defendant's own admissions.  You heard

16   yesterday that the parties had stipulated, which means that

17   they agree that the defendant, under the penalty of perjury,

18   admitted in July 2012 that he was a Mexican citizen, that he'd

19   been deported or removed before, and that as of May 2012, he

20   had no permission to be here.

21         On top of that, after the defendant was arrested, he

22   admitted to Agent Sells that he was a Mexican citizen, that he

23   had no documentation to be here, and that he knew he was in the

24   U.S. illegally.

25         And finally, you heard from Agent Alexandre that just

1    yesterday, he searched databases looking for any indication

2    that this defendant had permission to be here.  He didn't find

3    any.  He looked in the A-file, and he didn't find any.  He

4    looked in the CLAIMS database.  And he looked in the CIS

5    database.  There was no consent allowing the defendant to be in

6    the country.

7            Now, the documents, the admissions, and the databases

8    show, and they prove that the defendant was a deported alien

9    without permission to come into the country.

10           So next, we'll look at the evidence that proves he

11   chose to come back into the country, and he wanted to stay.

12   Let's start with his actions.  He chose to come out to a remote

13   area in the middle of nowhere, nine miles from a port of entry.

14   No one forced him to do that.

15           He decided that he should travel through an area that

16   would make it hard to find him.  And he was right.  He got five

17   miles into the country before Border Patrol agents even knew

18   that he was there.  And when they started to close in on him,

19   he fled and he hid.

20           Now, that speaks volumes.  Why would you hide unless

21   you didn't want to be found?  He didn't turn himself in.  He

22   didn't wave his arms at the Border Patrol agents, or the Border

23   Patrol vehicles, or the helicopter flying low overhead.

24           Instead, he climbed into a bush, he lied on his back,

25   and didn't move or make a sound, because he knew he wasn't

1   supposed to be there, and he didn't want to be found.  Then

2   right away after he was arrested, he admitted that he knew he

3   was in the United States, and he knew he was here illegally.

4        And really, he was just admitting what his actions had

5   already proved.  Now, we've walked through the evidence that

6   shows that he was a deported alien -- that he was a deported

7   alien without consent to be in the country, and that he came

8   back voluntarily, and he wanted to stay.

9        So we come to the last element, freedom from official

10  restraint.  Now, to prove the defendant was free from official

11  restraint, the government needs to prove that he was not under

12  constant government observation, from the moment that he

13  stepped across the border up until the moment he was arrested.

14       Well, we know he wasn't under constant government

15  surveillance because he made it five miles into the country

16  before Border Patrol even knew he was there.  And you can see

17  why by looking at this terrain.  All those mountains and ridges

18  blocked Agent Huber's view of most of the border, south of

19  where the defendant was found.

20       Agent Huber didn't even know where, when, or how the

21  defendant crossed the border that day.  And that other scope

22  that was in the area could see even less.

23       Now, if other agents had spotted the defendant in

24  those five miles before he showed up on the scope, they would

25  have called it out on the radio.  But you heard testimony that

1    Agent Huber didn't hear any radio chatter to that effect,

2    except for that group that was found right next to where the

3    defendant was found.

4         The bottom line is this.  The defendant evaded

5    surveillance when he was crossing the border, and for five

6    miles after that.  And each of those facts alone is enough to

7    prove that he was free from official restraint.

8         Remember, even after the defendant popped up on Agent

9    Huber's scope, he only saw him on and off after that.  I mean,

10   you saw the video.  It would have been hard enough to track the

11   defendant before he went and hid in a bush, let alone after.

12        Now, you'll have the opportunity to review those

13   surveillance clips when you go back to deliberate.  And you'll

14   see that even though the picture is really grainy, the fact

15   that he wasn't under constant surveillance will be very clear.

16        So let's go back to that list we started with.  All

17   the evidence we talked about, it all fits together to prove

18   each and every one of those elements beyond a reasonable doubt.

19        And in the end, when you go back to deliberate, just

20   use your reason and your common sense.  Look at the defendant's

21   admissions in the field and under oath.  Look at the

22   immigration documents with the defendant's name, his

23   fingerprints, and his pictures on them.

24        Last but not least, look at the defendant's actions.

25   He went miles out to a remote mountainous area.  He dodged

1    surveillance.  And then he climbed into a bush, lied on his

2    back, and didn't make a sound while at least five agents and a

3    helicopter looked for him.

4         Despite his efforts, and despite the fact that agents

5    lost sight of him on and off, eventually they found him in a

6    place where he wasn't supposed to be.

7         Members of the jury, you'll find when you look at the

8    evidence, that there's only one verdict that's supported by

9    that evidence in this case, that the defendant is guilty as

10   charged.

11        Thank you.

12        CLOSING ARGUMENT BY COUNSEL FOR THE DEFENDANT

13        MS. SHERRON:  When I was a kid, my dad would say,

14   Brittany, almost only counts in horseshoes and hand grenades.

15   Admittedly, I had no idea what horseshoes or hand grenades had

16   to do with anything, but I understood my dad to say that almost

17   just didn't cut it.

18        Ladies and gentlemen, we've heard the government's

19   evidence, and almost just doesn't cut it.  They may be able to

20   prove some elements to you, but they have to prove all of the

21   elements beyond a reasonable doubt.

22        There are two things that they must prove, but they

23   have failed to prove to you.  The first is that Mr. Vasquez was

24   removed before -- was removed from this country before.  And

25   the second is that -- is the manner in which he entered the

 1  United States.  They have to prove to you that he came in

 2  voluntarily, and that he was found in the United States.  But

 3  we haven't heard any evidence about how he entered, where he

 4  entered, or what happened.

 5          So let's talk about those in turn.  First, let's talk

 6  about how he was removed, or if he was removed.  The government

 7  brought to you Agent Pena, who took that stand and told you

 8  that he didn't remember anything.  That he, in fact, has done

 9  thousands and thousands of deportations and he had no memory of

10  this Mr. Vasquez.

11          He told you that he grabs a stack of papers, calls

12  people's names, and has them get on to a bus that they

13  contract.  They drive to the border, and he watches people walk

14  to the midpoint.

15          Then he goes back to his station, and he signs all of

16  that paperwork without any memory of who actually just crossed

17  the border.  They brought him here all the way from Texas, so

18  that he could tell you that he doesn't remember.

19          Let's talk about the elephant in the room.

20  Ms. Colgan, if you could pull up Government's Exhibit 18A and

21  scroll to the second page.

22          Who is that man?  He looks nothing like this

23  Mr. Vasquez.  The government just stood here and told you that

24  this document is from eight days before he came back into the

25  United States.  The man on the screen is clearly 100 pounds

1    more than this petite, slim man sitting next to my co-counsel.

2          Thank you, Ms. Colgan.  They then brought to you --

3    they then have to prove to you that Mr. Vasquez was

4    undocumented at the time that he entered the United States.

5          Now, that means that the manner and the time and place

6    that he entered are facts that you, as the jury, need to find

7    beyond a reasonable doubt.

8          Now, you heard from Agent Huber, who told you that he

9    was operating a scope.  It was very hard to see.  Ms. Sapthavee

10   just stood in front of you and told you that the video was

11   grainy.  I believe she said very grainy.  It was difficult for

12   him to see.  It was difficult for him to tell who those four

13   people were, what they were wearing.  He couldn't tell what

14   color hair they had, if they were male or female, he couldn't

15   tell anything about them.

16         And then he was watching this video looking for anyone

17   else who might be out there.  And he saw another ant-like

18   object on the screen.  And he sent some agents to go find out

19   who that might be.  In fact, he couldn't tell them exactly

20   where to go.  There were five agents running around in these

21   hills in the rough terrain, looking for an ant on a screen.

22         And they did eventually find someone.  They found a

23   man that Agent Sells told you himself, the agent who found him,

24   told you himself was wearing all black.

25         And I want you to remember that, and we're going to

1    come back to that in a second.  But Agent Sells also told you

2    that the person that he found made some admissions there on the

3    hillside.  That that person he found told you that he wasn't a

4    citizen, that he had no -- no right to be there, that he had

5    been removed before.  And the government is asking you to rely

6    on those admissions.

7          But Agent Sells told you that those admissions were

8    made in Spanish.  And he told you that he had studied Spanish

9    for six months.  Now, I know that at least a couple of you know

10   more than one language.  And I bet that it took you longer than

11   six months to become fluent in that language, and to be able to

12   have a full conversation with someone in that other language.

13         So let's talk about the clothing.  Agent Sells told

14   you that the man he arrested was wearing all black.  Then the

15   government brought you Agent Alexandre, who was the processing

16   agent, and put his name on all of the paperwork.

17         Agent Alexandre told you that the man that he

18   remembered processing, he, in fact, watched a video, so that he

19   was accurate.  And he told you that that man was wearing a

20   white shirt and light tan shorts.

21         That is the opposite of black.  Perhaps if he had

22   said, oh, the -- if Agent Sells had said, oh, the man running

23   was wearing light gray clothing, we could forgive that.  But he

24   said black, and Agent Alexandre looked at a video where the man

25   was wearing mostly white.

1          Now, I'm no artist, but those are opposite colors.

2     The problem here is that we don't know who that man was who was

3     found on the hill.

4          Agent Sells told you that he was not the one who

5     transported him to the station.  He was not the one who

6     processed the man that he found on the hill.  He has no idea

7     what happened to that man.  He may have been returned to

8     Mexico.  All we know is that this Mr. Vasquez, for some reason,

9     was at the Brownfield Station that day.

10          So let's talk about the fingerprint evidence.  The

11    government is trying to connect this Mr. Vasquez with the file

12    of a Mr. Vasquez that they found.  They brought you Laurie

13    Torres -- well, first, they brought you Agent Alexandre, who

14    said that he has no idea who took those fingerprints, where

15    they came from, if they were from this man, if they were done

16    properly.  He wasn't there.  He put his name on paperwork, but

17    he has no idea who took those fingerprints.

18          Then they brought you Ms. Torres, who took the stand

19    and explained that she used the ACE method.  The ACE method is

20    different from the ACE-V method in one very important respect,

21    the V stands for verification.  And she never verified her

22    work.  She never gave it to another person who could check to

23    see if she had come to the same conclusion.

24          Ms. Clark, my co-counsel, asked her how many markers

25    are there that could possibly be found in similarity between

1    fingerprints.  And she said 125.  Well, on the demonstrative

2    that the government showed you, Ms. Torres found eight.  And

3    she also told you that it would take a single difference to

4    exclude someone.  That we all have similar ridges, and

5    bifurcations, and loops, and whorls, and that our fingerprints

6    are mostly made up of the same characteristics.  It's just

7    where they lie that's different.

8         And she found eight similarities, when all you needed

9    to exclude is one.  She also told you that she was hired by the

10   prosecutor, and that when she was looking at the fingerprint

11   cards, she saw the same name on all of the documents that were

12   given to her.

13        This wasn't a blind test.  She wasn't given

14   fingerprints and asked to see if perhaps some of them were

15   similar.  No, she was asked to confirm that they were the same.

16   That might seem like a small difference, but it means that she

17   was starting from the premise that they would match.  And it

18   means she already had in her mind that these were from the same

19   person.  She wasn't starting from the premise that perhaps they

20   were not, and that she would need to be very particular to see

21   if there were any differences.

22        Another important thing is that she told you that

23   she'd gone to multiple trainings on the ACE-V method, that she,

24   in fact, has taught people how to do these comparisons for

25   trials such as these.  She teaches people.  And she told you

1   that the recommended practice for 10 print finger cards, which

2   is what she was using in this case, is ACE-V.  That the

3   recommended practice is to verify.

4            In a federal criminal case, shouldn't we be using the

5   practice that's recommended?  As I explained to you at the

6   beginning, there is one document that could definitively say

7   Mr. Vasquez was from a different place.

8            Not only did the government fail to prove to you

9   beyond a reasonable doubt that this Mr. Vasquez is the same

10  Mr. Vasquez from the A-file, but they also failed to prove to

11  you beyond a reasonable doubt that this Mr. Vasquez is from

12  somewhere else.

13           They didn't bring you a birth certificate.  We have to

14  bring our birth certificates to prove that we are who we say we

15  are, but the government is asking you to find that this man is

16  who they say he is with no definitive proof.

17           Lastly, Ms. Sapthavee talked to you about the special

18  finding at the bottom of the verdict form, that they're going

19  to ask you to find that this Mr. Vasquez was removed after

20  November 1st, 2016.

21           And they're relying on that document with a picture of

22  a man that I don't know to get -- to ask you to find -- to make

23  that finding.  So that's an easy one.  You can just put, no.

24  He was not removed, because we don't know who this man is.

25           At the beginning of this case, we talked about the

```
 1   ladder of proof, and the fact that the government had to fill

 2   in all of the bricks for you to make that ladder stable, so

 3   that you could get to the top.

 4         Now, I don't know if any of you have been sky diving,

 5   and I am certainly far too chicken to do that.  But if you were

 6   to go sky diving, you would want to be virtually certain that

 7   your parachute was going to open.

 8         You wouldn't want to think, it's probably going to

 9   open, or maybe it's going to open.  You would want to know,

10   before you jump out of a plane, that that parachute is going to

11   help you land on the ground.

12         So while you're all deliberating, I want you to think

13   if you have any reasons not to jump.  If you think this

14   Mr. Vasquez was not the man wearing all black, that's a reason

15   not to jump.  If you think that this Mr. Vasquez is not the man

16   on that warrant of deportation, because they look nothing like

17   each other, that's a reason not to jump.

18         Now, you all are sitting here, and Judge Burns has

19   said this multiple times, you all are sitting here because you

20   went through the process of being chosen, because you were all

21   reasonable people.  So if you have doubts, talk to each other.

22   Think about what's reasonable.  Think about what somebody else

23   might say.  Because you will come to a reasonable conclusion.

24         And if at the end of the evidence, if you have reasons

25   not to jump, if you have a doubt or a question that hasn't been
```

1    answered, then this case has not been fully proven to you.  And

2    almost doesn't cut it.  Not in a federal criminal case.

3          So then you have the power to return the verdict,

4    which in this case is just, return a verdict of not guilty.

5    And put on that special finding, no, he was not the man who was

6    taken across after November 1st, 2016.

7          Thank you.

8       REBUTTAL CLOSING ARGUMENT BY COUNSEL FOR THE GOVERNMENT

9          MR. DESHONG:  Ladies and gentlemen, I think the

10   defense is mistaken about a few things that I'd like to go over

11   with you.  It sounds like their theory is that this is a case

12   of mistaken identity.  And that's ridiculous.  And there's a

13   couple of reasons you can know it's ridiculous.

14         One, I didn't hear the defense reference at all that

15   they stipulated.  You heard Judge Burns, that stipulation means

16   it's conclusively proven to you that this defendant in 2012, in

17   an official proceeding, admitted under oath that he is not a

18   citizen of the United States, he's a citizen of Mexico.  That

19   he has previously been deported.  And that at that time, he

20   didn't have permission to come back.

21         And before I get into the significance of that a

22   little more, I want to talk about those removal documents.

23   Those are documents over a 24-year history at this point.  And,

24   yes, they're not perfect.  Some of them are old.  But all of

25   them are linked to him by his name, Manuel Vasquez-Perez or the

1   alias he's used, Mario Vasquez-Perez.  His A number, his

2   photograph, and his fingerprint.

3           And I want to show you one of those documents.  Can we

4   put up Exhibit 18A?  And this is why that stipulation is so

5   important.

6           I need a call out of the top half of that.  So you'll

7   remember, Exhibit 18A is after he'd already been deported once

8   and he came back.  You may have remembered some testimony that

9   this document was prepared in May of 2012.  It is not a

10  coincidence that just a little bit after that, he is in an

11  official proceeding talking about his immigration status in May

12  of 2012.

13          They stipulated that that was him in that proceeding

14  talking about his status on this date, the A-file document with

15  his name, with his A number, with his photograph, and his

16  fingerprint.

17          Now they want to say it has nothing to do with him?

18  That's ridiculous.  And beyond that, look at the date of the

19  prior removal order here.  Actually, I think it's -- can we go

20  to 17, please?

21          This further serves to connect him to the document.

22  You may have remembered, he appeared before an immigration

23  judge on April 10th of 1997.  Look at the notice he got when he

24  came in May of 2012.  It is reinstating a removal order from

25  April 10th of 1997.

1           Can we go to 13 now?  And, again, all these documents,

2    his name, his A number, they fit together.  And can we do a

3    call out of the top half?  Again, his immigration judge order,

4    all the way back from 1997, Manuel Vasquez-Perez, with that A

5    number is being ordered deported to Mexico, and didn't even

6    seek relief contesting it.  And they want to say this is

7    mistaken identity?  That's ridiculous.

8           And, yes, there's some issues, Agent Alexandre didn't

9    take the fingerprints on that 10 print card.  But you heard him

10   say, there's a process.  It's automatic.  Prints are scanned,

11   photos taken at the end.  And then he sat down with the person

12   and looked at the photograph, looked at the person in front of

13   him, reviewed his information to confirm it was correct, and

14   had him initial for the property that was being held.  And he

15   put the initials MV, Manuel Vasquez.  That's a lot of

16   coincidences they're expecting you to find.

17          Remember, you heard the instructions, a reasonable

18   doubt is a doubt based on reason and common sense.  It is not a

19   doubt based on pure speculation.  And reason and common sense

20   applied to this evidence firmly establishes it is the defendant

21   who is being addressed in all these documents.  And you have

22   his statements under oath proven conclusively to confirm that.

23          Now, I think the defense is also a little confused

24   about the significance of how he entered the United States.  We

25   don't have to prove exactly when or where he entered.  We have

1    to prove two things, that he came voluntarily, nobody put a gun

2    to his head and marched him in against his will.  No evidence

3    of that at all.  You saw the scope.  He was alone.  Who was

4    forcing him to do anything?  No one.

5         And then we have to prove that he knew he was in the

6    United States.  And, again, use your reason and common sense.

7    Look at his actions, look at where he chose to enter, and think

8    about what he knows about his history.

9         He knows he's someone who's been deported.  He knows

10   he's not allowed to be here.  And so how would someone who

11   knows they're not supposed to be here act?  They would go out

12   to the middle of nowhere, where they don't expect anyone to see

13   them.  And then if they run into anybody, they'd hide.

14        That's all you need to know.  That he voluntarily came

15   in.  He knew where he was.  And he wasn't under constant

16   government surveillance from the moment he crossed till the

17   moment of his arrest.  Just some point he evaded detection,

18   that's it.  If you find those three things, those elements have

19   been proven.

20        You know, and going back to the beginning, you know, I

21   just want to make clear one thing.  You know, both sides in

22   this case are entitled to a fair trial.  And that's why you

23   took an oath at the beginning that you would make your decision

24   based on the evidence, and the law as Judge Burns gives it to

25   you.

1          That you would not consider the things we talked about

2     a lot in voir dire, you know, sympathies, prejudices, you know,

3     someone's position in the community.  That's not an appropriate

4     basis for this decision.  Our duty and our burden, which never

5     leaves this table, is to prove the elements to you beyond a

6     reasonable doubt with the evidence.

7          It's not to answer every question.  It is not to prove

8     it beyond all doubt.  It is to prove those elements beyond a

9     reasonable doubt.  And as I said, a reasonable doubt is a doubt

10    based on reason and common sense.  It is the same standard

11    that's been applied in this country for 200 years.  Nothing

12    special about it here.

13         And if you look at the evidence that's been presented,

14    at those A-file documents, how they all fit together,

15    immigration judge, April 10th, 1997, notice referencing that

16    prior order with his name, A number, and photo on it.  His

17    stipulated admissions, saying as of that very month, way back

18    in 2012, he was not a citizen of the United States, he'd been

19    removed and didn't have consent.

20         And by the way, he would have had to get consent after

21    his last deportation in eight days.  And the United States

22    Government is a lot of things, but it is not fast moving.

23         And to say he applied and received permission to come

24    back in an eight-day window between October 12th and October

25    20th, no evidence of that.  So look at how all those documents

1    fit together, look at his admissions, the ones that they

2    stipulated to, and the ones in the field.  Are those consistent

3    with all the other evidence?  And of course they are.  He says,

4    I knew I was here illegally.  And someone who knows where

5    they're not supposed to be hides when anyone approaches,

6    because they know they're doing something wrong.  It's

7    consciousness of guilt.

8           And if you follow your oath, and look at that evidence

9    fairly and impartially, I submit to you there's only one

10   conclusion it supports.  And that's the defendant is guilty of

11   being a removed alien found in the United States.

12          Thank you.

13          THE COURT:  All right.  Ladies and gentlemen, at this

14   time, I'll -- I'll give you the remaining instructions having

15   to do with the deliberation process.  When you begin

16   deliberations in just a few minutes, you should elect one

17   person to speak as your foreperson.  That person is simply

18   first among equals.  It helps to have someone who can

19   coordinate the discussion and make sure everyone has an

20   opportunity to speak.

21          Then the 12 of you are to discuss the case among

22   yourselves with fellow jurors to reach agreement.  If you can

23   do so, your verdict, whether guilty or not guilty, has to be

24   unanimous.  All 12 must agree to it.

25          Each juror must decide the case for himself or

1    herself, but should do so only after you've considered all of

2    the evidence and you've discussed it fully with other jurors,

3    and importantly, you've listened to the viewpoints of other

4    jurors.  Don't be afraid to change your opinion if the

5    discussion persuades you that you should.

6           On the other hand, don't come to a decision simply

7    because other jurors think it's right if you continue to have

8    misgivings.  It's important -- it's very important that the 12

9    of you strive to reach a unanimous verdict in this case, but of

10   course, only if you can do that after having made up your own

11   conscientious decision.  Don't change an honest belief about

12   the weight or effect of the evidence simply to reach a verdict.

13          Some of you took notes during the trial.  Whether you

14   took notes or didn't, you should rely primarily on your memory

15   of what was said.  The notes are only to assist your memory and

16   you should not be overly influenced by them.

17          A subject that has no bearing on whether the

18   government has proved the defendant guilty beyond a reasonable

19   doubt, a subject that has no bearing on that is whatever the

20   punishment is provided by law for this crime, in the event you

21   find the defendant guilty.  You should not consider the

22   consequences of the verdict, in particular, punishment, in

23   deciding whether the government has proved its case.

24          We prepared a verdict form for you.  It's a simple

25   form.  It has the caption of the case in the upper right-hand

1    corner, United States against Manuel Vasquez-Perez.  And it

2    reads, "we, the jury, in the above entitled case find the

3    defendant," and then there's a blank next to the only charge

4    with which Mr. Vasquez is accused, and that is of being a

5    removed alien found in the United States.

6          If you find the defendant guilty, you write that word

7    in.  If you find him not guilty, you write those words in.

8    Then as the parties both mentioned, there's a second question

9    on here.  This question is to be answered only if the jury

10   unanimously finds the defendant guilty.  And it reads as

11   follows:  "If you find the defendant guilty, do you further

12   find that the defendant was removed, deported from the United

13   States sometime after November 1st, 2016."

14         So, only if you find the defendant guilty do you need

15   to answer that.  If you find him not guilty, you just leave

16   that blank.  And the options are down below, yes or no, we do

17   find he was deported sometime after November 1st, 2016, or we

18   don't.

19         The foreperson then should sign the verdict and date

20   it.  Today's August 5th.  So that's how you record the decision

21   once you have reached a verdict in the case.

22         If it becomes necessary during deliberations to

23   communicate with me, you can send out a note through my bailiff

24   and my law clerk, Dean Schaffer.  The note can be signed by any

25   one of you.  Let me mention something about notes.  I told you

1    at the beginning that everything you need to decide this case

2    would be presented here, and I believe that that's true.  Now,

3    as we sit here at the conclusion of the case, I believe there's

4    information for you to make a decision, competent decision in

5    this case.

6         I sometimes get a note saying, well, we want to see

7    this report or this person was mentioned, we'd like to hear

8    from this person.  No can do.  The arrow has left the bow at

9    this point.  The parties have put on the evidence that they

10   believe is sufficient for you to decide, one way or the other,

11   the case, and you must decide the case on the basis of that.

12        So we can't give you additional evidence, things that

13   the parties have chosen either not to offer or not in evidence

14   at this point.  You have to make the decision on the basis of

15   what's been presented.

16        Now, on the other hand, if you find some ambiguity in

17   the instructions, if you want some additional clarification,

18   something like that, send a note out.  I have to discuss any

19   question you send out with the lawyers before deciding how to

20   answer it, so you should continue your deliberations, if you do

21   send a note out.

22        I'm not necessarily inviting notes.  But as I said, I

23   promised you that we would give you what you needed to decide

24   this case.  And if you find that there's some ambiguity,

25   something that we can help you with, we're -- we're happy to

1   attempt to do that.

2          If you do send out a note and you've taken some sample

3   ballots, don't tell us how the jury stands, numerically.  We're

4   not to know how you stand numerically until such time that

5   you've reached a unanimous verdict.

6          So what I'll do is put these instructions I promised

7   to give you, and the verdict form into this green file.  And

8   this will go with you back to the jury room.

9          We have also digitized all of the exhibits that have

10  been admitted.  Who's handy with a computer?  Anybody?  Okay,

11  good.  Somebody take the lead.  This is easy.  It's a thumb

12  drive, you put it in, you'll see a machine back there, and you

13  can scroll through, and look at any exhibit that you want to.

14  Tish, do we have that exhibit?

15          THE CLERK:  Yes, Your Honor.

16          THE COURT:  Okay.  Both sides have seen it, and concur

17  that the exhibits --

18          MR. DESHONG:  Yes, Your Honor.

19          THE COURT:  So those things -- yes?

20          A JUROR:  May I ask a question, Your Honor?

21          THE COURT:  Yeah, sure.

22          A JUROR:  During the testimony, there was at least one

23  occasion maybe two, when evidence was being presented but we

24  weren't seeing it and then -- and then they didn't --

25          THE COURT:  I see.  Yes, okay.

1          A JUROR:  Are we supposed to disregard that?

2          THE COURT:  So there were some exhibits, and I think I

3     remembered, I asked defense counsel about it yesterday, but

4     there were some exhibits that were just shown to the witness to

5     elicit testimony from the witness about the exhibits, but they

6     were not offered into evidence.

7          So if they're not offered into evidence, they're not

8     shown to the jury.  Before anything's shown to the jury, it has

9     to be offered and admitted into evidence.  And these things, I

10    think, were just to refresh somebody's memory or to give them a

11    point of reference from which they were then asked questions.

12    So, yes, there were some exhibits that were shown to the

13    witness only, that were not offered into evidence, and you

14    won't have those, but those were choices made by counsel.

15         A JUROR:  But we can still use the conversation.

16         THE COURT:  Of course.  Any testimony

17    pertaining -- any testimony that was offered is -- should be

18    considered by you.  But your specific question was, well, what

19    about the things to which the testimony related.  If they

20    weren't offered into evidence themselves, if the document

21    wasn't offered, then it doesn't go in.

22         But anything that was said about it, any questions

23    that were asked, any testimony given, you certainly may

24    consider that.  Okay.  You may begin your deliberations now.

25         (At 10:00 a.m., the jury was excused, and the following

```
1    proceedings were held:)
2            THE COURT:  All right.  Have a seat.  The jury is not
3    present.  Counsel are present.  Do both sides agree that the
4    instructions were given as indicated after the instructions
5    conference?
6            MS. SHERRON:  Yes, Your Honor.
7            MR. DESHONG:  Yes, Your Honor.
8            THE COURT:  Okay.  Anything else?
9            MR. DESHONG:  Not at this time from the government.
10           MS. SHERRON:  No, Your Honor.  Thank you.
11           THE COURT:  We have your cell number?
12           MS. SHERRON:  Yes.
13           THE COURT:  And yours?
14           MS. SAPTHAVEE:  Yes.
15           THE COURT:  Okay.  No more than 10 minutes away.
16   Tish, did you have something they need?
17           THE CLERK:  No, I was just showing you the list.  We
18   have their numbers.
19           THE COURT:  Okay.  All right.  We're in recess.
20        (A recess was taken from 10:01 a.m. to 10:29 a.m.)
21           THE COURT:  Counsel are present.  The defendant is
22   present.  The jury is not present.
23           We received a note that reads as follows:  "Is it
24   possible to get a visual of the defendant, specifically the
25   neck tattoo."
```

```
1            I'm happy to hear from counsel on their positions.

2            MS. CLARK:  Your Honor, there was no testimony

3    introduced about Mr. Vasquez-Perez's neck tattoo.

4            THE COURT:  Is it depicted in one of the photographs?

5            MR. DESHONG:  It is.  And we didn't object at the

6    time, but I think Ms. Sherron basically made sort of a personal

7    exclusion, based on her visuals of him.  And the jury didn't

8    really get a look at him, because he had his mask, and he's

9    seated where they can't see him.

10           THE COURT:  All right.  Ms. Clark, anything else on

11   behalf of the defendant?

12           MS. CLARK:  Well, Your Honor, I think we could look up

13   18A.  I don't recall the neck tattoo on 18A, which I'm guessing

14   is the picture Mr. Deshong thinks it's on, although I'm happy

15   to be corrected.

16           THE COURT:  Do you have a copy of the exhibit here?

17   Actually, I had the book.  Gabby, do you still have the book

18   that they gave me?

19           THE CLERK:  I do not have a book, Your Honor.

20           THE COURT:  Did we return the exhibit book back to

21   you?

22           MR. DESHONG:  Unfortunately, I think we have the

23   witness copy.  I don't know that we have the Court's copy.

24           THE COURT:  It doesn't matter which copy I have.  I

25   just want to see the exhibit, to see if the neck tattoo is -- I
```

1   mean, I assume it must be visible, because they're referencing

2   it, and there wasn't testimony about it.

3           MR. DESHONG:  I mean, he also has tattoos on his face

4   above his mask that are visible in the photo.

5           THE COURT:  Can I see the exhibit, please?

6           MS. SHERRON:  Would you like me to approach, Your

7   Honor?

8           MS. CLARK:  Your Honor, my concern is that

9   Mr. Vasquez-Perez, the tattoos that are visible here today are

10  one on his eye, and one behind his ear.  And neither of those

11  can be seen in that.  What can be seen is a tattoo that we

12  don't know if Mr. Vasquez-Perez has.

13          THE COURT:  There's a tattoo on the neck in the

14  photograph on the left side of his neck.

15          MS. CLARK:  I saw that on that exhibit, Your Honor,

16  but we cannot see that sitting here today.

17          THE COURT:  No, the question is, should the defendant

18  be ordered to stand in front of the jury, open his collar, take

19  his mask off, and let them view that side of his neck, which is

20  not an intimate body part.  In the photo, if this is his photo,

21  it appears to be, oh, maybe two inches down from his chin, on

22  the left side of his neck.

23          So that's the question.

24          MS. CLARK:  Yes, Your Honor, and I don't personally

25  know if Mr. Vasquez-Perez, sitting next to me, has that tattoo,

```
1    but he was not asked to remove his shirt or unbutton his shirt

2    during the trial when the evidence was introduced.

3              THE COURT:  No, I understand that.  But the argument

4    wasn't made at that point, and it wasn't apparent that the

5    defendant was going to claim that the person depicted in the

6    photos was not him.

7              That argument was made by your co-counsel during her

8    argument.  In fact, she offered her personal opinion that she

9    looked over, and the person is, she estimated, hundred pounds

10   heavier in the photo and doesn't look like the same person to

11   her.  So it's implicated here.

12             Anything else on this?

13             MS. CLARK:  We would object to reopening the case, so

14   that the government could introduce evidence of this particular

15   person's neck tattoos.

16             MR. DESHONG:  Your Honor, I think, perhaps, there's

17   sort of a middle ground, as opposed to having him open his

18   shirt and take the act of that.  Perhaps just having him stand

19   in a place where the jury can just get a look at him as he

20   would have been in Court is sort of a more appropriate middle

21   ground, because there are other tattoos on his face that are

22   visible in that photo that would be visible upon just a plain

23   view of him as he is right now, as opposed to having him sort

24   of him be ordered to open his clothing.

25             THE COURT:  Okay.  The Court rules as follows.  First,
```

1   I'm relying on the United States versus McGuire, which I find

2   to be persuasive.  It's a recent case out of Montana.

3           The McGuire case notes that in Gilbert versus

4   California -- I'm sorry, in United States versus Dionisio,

5   D-I-O-N-I-S-I-O, 410 U.S. 1, 1973, the Supreme Court said,

6   "it's long been held that the compelled display of identifiable

7   physical characteristics infringes no interest protected by the

8   privilege against compulsory self-incrimination."

9           And the McGuire case says that, too.  So we're not

10  dealing with a Fifth Amendment issue.  He's not being compelled

11  to give evidence against himself.  Physical characteristics are

12  outside of that realm.

13          In United States versus Jones, a Ninth Circuit case,

14  the citation for which is 653 Fed Appendix 861, 2016, the Court

15  held that the district court didn't err by allowing the jury to

16  view the defendant's scar during deliberations, a request came

17  during deliberations, and the Court ordered the defendant to

18  display the scar.

19          The Ninth Circuit wrote in this case, "the jury may

20  view a defendant's facial features during deliberations if it

21  had an opportunity to observe him at trial."

22          They did here.  They had an opportunity to observe

23  him.  Not all of him, because he wore a mask.  And then,

24  finally, in United States versus Rincon, at 28 F.3d. 921, Ninth

25  Circuit, 1994, the Court found, again, that the display -- let

1   me find the pertinent part -- of the defendant next to a

2   surveillance photograph, again, during jury deliberations was

3   proper.  They rejected -- the circuit rejected arguments that

4   it was extrinsic evidence not introduced at trial, and was thus

5   prejudicial.

6            So I find here that it is relevant evidence, in

7   particular, highlighted relevant because of the defense

8   counsel's argument that the defendant is not the person

9   depicted in the photos.  And as I said, offered her own opinion

10  as to that.

11           So the Court will order the defendant to appear, stand

12  here in the well in front of the jury, take his mask off and

13  just open his shirt collar.  I do so understanding that it's

14  over the defense objection.

15           Mr. Vasquez, if you'll take your mask off, please?

16           Dean, if you'll summon the jury.

17           MS. CLARK:  And, Your Honor, we will object again

18  specifically to the unbuttoning of the shirt, which was not

19  present during trial.

20           THE COURT:  Okay.  But, again, as I said, no mention

21  was made that this -- during the trial, no suggestion was made

22  that this wasn't the same person.

23           Mr. Vasquez, will you take your head phones off for

24  just a minute and take your mask off.

25           MS. CLARK:  I would ask, Your Honor, that the marshals

1    not be standing --

2              THE COURT:  Yeah, I'll let him walk up himself.  And

3    Mr. Vasquez, if you'll unbutton the top button of your shirt,

4    please.  And roll the collar back a little bit on the left

5    side, yes.  Okay.  And if you'll please -- just one moment.

6              Gabby, did I hand you back the note?  All right.  All

7    members of the jury are present.  Counsel are present.

8              The jury has sent a note.  Is it possible to get a

9    visual of the defendant, specifically the neck tattoo.  I have

10   asked Mr. Vasquez to remove his mask.

11             He's going to come stand in front of you.  I've asked

12   him to open his collar.

13             Mr. Vasquez, please, if you will stand here

14   approximately five feet from the jury?

15             All right.  I think that's good.  Can members of the

16   jury see Mr. Vasquez at this point?

17             And, Mr. Vasquez, will you pull your collar open,

18   please?  And face the jury.

19             Have all members of the jury had an opportunity to

20   view Mr. Vasquez?

21             A JUROR:  We can't see well enough on his collar.

22             THE COURT:  Will you pull the left side of your -- the

23   right side.  Yeah, his left side, please.  Pull your left side

24   of the collar down, please?

25             All right.  Have all members of the jury had an

1    opportunity to view Mr. Vasquez?

2         Okay.  Thank you.  You may continue your

3    deliberations.

4      (At 10:39 a.m., the jury was excused, and the following

5    proceedings were held:)

6         THE COURT:  All right.  The jury is not present.

7    Counsel and the defendant are present.  For the record, I

8    instructed the defendant and he complied with the Court's

9    instructions.

10        He appeared approximately, oh, I would say five or six

11   feet away from the front of the jury box, and he complied with

12   the Court's request that he pull his collar down on both sides.

13   He took his mask off.  He did not have head phones on.

14        No marshals were around him, although the interpreter

15   was standing behind and interpreting the Court's instructions.

16        Do both sides agree that that is a fair

17   characterization of what just occurred?

18        MS. SHERRON:  Yes, Your Honor.

19        MS. CLARK:  Yes, Your Honor.

20        MR. DESHONG:  Yes, Your Honor.

21        MS. CLARK:  The Court instructed Mr. Vasquez to

22   unbutton his shirt and open his collar to show parts of his

23   body that were not visible to the jury during trial.

24        THE COURT:  That's right.  The left side of his neck.

25   He had -- for the record, he had his collar buttoned all the

1    way to the top during the trial at least today.

2          And he had a mask that came down and barely -- if it

3    didn't touch the top of his collar, it was very close.  So that

4    portion of his face was disguised.

5          I don't mean in any deliberate way to fool anybody,

6    but because of the mask, it was disguised during the course of

7    the trial, with the exception of the one time I instructed him

8    to take the mask down, so he could be identified by the Border

9    Patrol agent who first encountered him.

10          Somehow in the -- in the course of these few minutes,

11   I've lost the note.  But we have a copy of it.  Do you have the

12   original note?

13          THE CLERK:  Yes.

14          THE COURT:  Oh, that's it.  Okay, good.  We'll mark

15   the note as Court's 1.  We're in recess.

16   (Court's Exhibit Number 1 was marked for identification.)

17        (A recess was taken from 10:41 a.m. to 11:38 a.m.)

18          THE COURT:  All right.  The parties and the defendant

19   are here.  The jury has indicated they have a verdict.

20          Dean, do you want to summon them in?

21      (The following proceedings were held in open court in the

22   presence of the jury:)

23          THE COURT:  All members of the jury are present.

24   Counsel and the defendant are present.  You may be seated.

25          Circumstantial evidence tells me Mr. Devine is the

1    foreperson of the jury.

2              THE FOREPERSON:  Yes.

3              THE COURT:  The jury has reached a decision, a

4    verdict, Mr. Devine, and you've filled out the verdict form?

5              THE FOREPERSON:  Yes.

6              THE COURT:  All right.  Dean, if you'll retrieve that

7    from Mr. Devine.

8              All right.  The verdict appears to be in order.

9              Counsel and the defendant will stand for the

10   announcement of the verdict, please.

11             THE CLERK:  United States District Court, Southern

12   District of California, United States of America, plaintiff,

13   versus Manuel Vasquez-Perez, defendant, Case Number

14   20-CR-3445-LAB.

15             Verdict:  We, the jury in the above entitled cause,

16   find the defendant, Manuel Vasquez-Perez, guilty of being a

17   removed alien found in the United States as charged in the

18   indictment.

19             If you find the defendant guilty, do you further find

20   that the defendant was removed from the United States

21   subsequent to November 1st, 2016?

22             Yes.

23             Dated August 5th, 2021, San Diego, California, signed

24   by the foreperson.

25             THE COURT:  Ladies and gentlemen, was this your

1    verdict, and was this your answer to the special question, so

2    say all of you.

3            JURORS:  (In unison) yes.

4            THE COURT:  Does either side request that the jury be

5    polled?

6            MS. CLARK:  Yes, Your Honor.

7            THE COURT:  We're going to call your name

8    individually, and have you affirm out loud that this was your

9    verdict, and that this was your answer to the special question.

10   Counsel may be seated.  Gabby, if you'll poll the jury, please?

11           THE CLERK:  Luke Devine, is this your verdict as

12   presented and read?

13           JUROR DEVINE:  Yes.

14           THE CLERK:  Angela Palatsi, is this your verdict as

15   presented and read?

16           JUROR PALATSI:  Yes.

17           THE CLERK:  Maximilian Parron, is this your verdict as

18   presented and read?

19           JUROR PARRON:  Yes.

20           THE CLERK:  Kenneth Brown, is this your verdict as

21   presented and read?

22           JUROR BROWN:  Yes.

23           THE CLERK:  Anthony Vincent, is this your verdict as

24   presented and read?

25           JUROR VINCENT:  Yes.

1            THE CLERK:  Karen Condon, is this your verdict as

2    presented and read?

3            JUROR CONDON:  Yes.

4            THE CLERK:  Catherine Kaya, is this your verdict as

5    presented and read?

6            JUROR KAYA:  Yes.

7            THE CLERK:  Sandra Acres, is this your verdict as

8    presented and read?

9            JUROR ACRES:  Yes.

10           THE CLERK:  Stephen Cafferty, is this your verdict as

11   presented and read?

12           JUROR CAFFERTY:  Yes.

13           THE CLERK:  Yasmin Rodriguez, is this your verdict as

14   presented and read?

15           JUROR RODRIGUEZ:  Yes.

16           THE CLERK:  Dennis Hernando, is this your verdict as

17   presented and read?

18           JUROR HERNANDO:  Yes.

19           THE CLERK:  And Dawn Waxon, is this your verdict as

20   presented and read?

21           JUROR WAXON:  Yes.

22           THE CLERK:  Your Honor, the jurors have been polled.

23           THE COURT:  All right.  Record the verdict.

24           Folks, this concludes your jury service.  I want to

25   thank you very much.  I mentioned yesterday when those who were

1  not selected left that we guarantee the right to a jury trial

2  in this country and the only way that we're able to do that, of

3  course, is if conscientious folks like you put aside their

4  priorities and daily activities, and heed the summons and come

5  in and serve as jurors.

6          It's a right that all of us hold, and an important

7  one.  And we appreciate you being here and fulfilling this

8  important duty.

9          Nice meeting all of you.  You're excused now to the

10 jury reception area, where you'll get final instructions, fill

11 out forms, get paid.  Have a nice weekend.

12         If you'll leave your notes on your chair, they'll be

13 collected and destroyed.  Nobody is going to look at them.

14    (At 11:44 a.m., the jury was excused, and the following

15 proceedings were held:)

16         THE COURT:  Be seated, please.

17         All right.  The jury has left.  Gabby, can you give us

18 a date for sentencing, please?

19         THE CLERK:  November 8th at 9:00 a.m.

20         THE COURT:  November 8th, you said?

21         THE CLERK:  Yes.

22         THE COURT:  At 9:00 a.m.?

23         All right.  The government offered exhibits.  It's to

24 hold the exhibits, unaltered, pending any possible appeal.

25         If bond was heretofore set for the defendant, it is

1   now revoked.  The defendant is ordered detained pending

2   sentencing in the case.

3            Anything else?

4            MS. CLARK:  Yes, Your Honor.  Two issues.  The first

5   is to resume the conversation that we had yesterday before

6   trial with regard to post-trial motions and the Posse Comitatus

7   Act.  I would ask for discovery with regard to the helicopter

8   that was disclosed the morning of trial, and we haven't had an

9   opportunity to look into that.

10           THE COURT:  You're talking about the helicopter that

11  observed the group at 7:45?

12           MS. CLARK:  And, Your Honor, the government was not

13  aware about the other helicopters and what type of helicopters

14  they were.

15           THE COURT:  All right.  So if you can ascertain that

16  fact, whether they were military or other helicopters, that

17  might -- if they're not military, then that would probably

18  foreclose any further inquiry.

19           And if it is military, we can go from there.

20           MS. CLARK:  And, Your Honor, I would also ask to

21  extend the deadline for filing post-trial motions until the

22  date of sentencing?

23           THE COURT:  Well, the filing has to be before then.

24  So we've set, what, November 8th or 9th, Gabby?

25           THE CLERK:  8th, November 8th.

1          THE COURT:  All motions, whether they have to do with

2    the Posse Comitatus Act, if that has legs, or any motion for a

3    new trial must be filed three weeks before the 8th of November.

4    And the government's response to both will be due one week

5    before the 8th of November.

6          Okay.  That's all.  Thank you.  We're in recess.

7      (The proceedings concluded at 11:46 a.m., August 5, 2021.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2

3        I, CYNTHIA R. OTT, Official Court Reporter, United States

4   District Court, Southern District of California, do hereby

5   certify that pursuant to 28 U.S.C. §753 the foregoing is a

6   true, complete and correct transcript of the stenographically

7   reported proceedings had in connection with the above-entitled

8   matter and that the transcript page format is in conformance

9   with the regulations of the Judicial Conference of the United

10  States.

11

12       DATED at San Diego, California, November 8, 2021.

13

14                         _____
                                  */s/ CYNTHIA R. OTT*
15                         CYNTHIA R. OTT, RDR, CRR

16

17

18

19

20

21

22

23

24

25