**ORIGINAL**

1                   UNITED STATES DISTRICT COURT

2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

3           BEFORE THE HONORABLE LARRY ALAN BURNS
                DISTRICT JUDGE PRESIDING

4

5 _____

  UNITED STATES OF AMERICA,    )  CASE NO. 20-CR-3445-LAB
6                      )
  PLAINTIFF,            )  MOTIONS HEARING
7                      )
        V.            )
8                      )
  MANUEL VASQUEZ-PEREZ,     )
9                      )
  DEFENDANT.            )
10                      )

11 _____

          REPORTER'S TRANSCRIPT OF PROCEEDINGS
12

           TUESDAY, FEBRUARY 22, 2022
13

             PAGES 1 THROUGH 40
14

  APPEARANCES:
15

  FOR THE PLAINTIFF:     U.S. ATTORNEY'S OFFICE
16                      SOUTHERN DISTRICT OF CALIFORNIA
                     880 FRONT STREET, SUITE 6293
17                      SAN DIEGO, CALIFORNIA 92101
                     *BY: MICHAEL A. DESHONG, ESQ.*
18

  FOR THE DEFENDANT:     FEDERAL DEFENDERS OF SAN DIEGO
19                      225 BROADWAY, SUITE 900
                     SAN DIEGO, CALIFORNIA 92101
20                      *BY: LAUREN J. CLARK, ESQ.*

21   COURT INTERPRETER:     MYLENE GREEN

22   UNITES STATES PO:      ALEXANDRA E. PLATAS

23   REPORTED BY:          ABIGAIL R. TORRES, CSR
                     CSR NO. 13700
24                      UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA
25                      333 WEST BROADWAY, SUITE 420
                     SAN DIEGO, CALIFORNIA 92101

1    **SAN DIEGO, CALIFORNIA; TUESDAY, FEBRUARY 22, 2022; 9:52 A.M.**

2                          -OOO-

3          THE CLERK:  CALLING NUMBER 2 ON THE CALENDAR,

4    20-CR-3445, UNITED STATES AMERICA V. MANUEL VASQUEZ-PEREZ.

5          COUNSEL COULD STATE THEIR APPEARANCE FOR THE RECORD,

6    PLEASE.

7          MS. CLARK:  GOOD MORNING, AGAIN, YOUR HONOR.

8          LAUREN CLARK, FEDERAL DEFENDERS, FOR

9    MR. VASQUEZ-PEREZ.

10         MR. DESHONG:  AND, GOOD MORNING, YOUR HONOR.  MICHAEL

11   DESHONG FOR THE UNITED STATES.

12         THE COURT:  GOOD MORNING, MR. DESHONG.

13         MS. CLARK:  MR. VASQUEZ IS PRESENT, YOUR HONOR.  HE'S

14   BEING ASSISTED BY THE SPANISH-LANGUAGE INTERPRETER.

15         THE COURT:  ALL RIGHT.  GOOD MORNING, MR. VASQUEZ.

16         THE DEFENDANT:  GOOD MORNING.

17         THE COURT:  MR. VASQUEZ IS HERE FOR SENTENCING.  HE

18   WAS CONVICTED BY A JURY OF VIOLATING TITLE 8, SECTION 1326,

19   BEING REMOVED AND FOUND IN THE UNITED STATES.  PRESENTENCE

20   REPORT WAS PREPARED IN THIS CASE.  AND I'VE REVIEWED IT.

21         HAVE YOU GONE OVER THAT WITH YOUR CLIENT, MS. CLARK?

22         MS. CLARK:  YES, YOUR HONOR.

23         THE COURT:  IN PREPARATION FOR SENTENCING, HERE'S WHAT

24   ELSE I'VE REVIEWED:  THE UNITED STATES FILED A SENTENCING

25   MEMORANDUM.  I HAVE REVIEWED THAT.  MS. CLARK, LIKEWISE, FILED

1    A SENTENCING MEMORANDUM.  I HAVE REVIEWED YOUR MEMORANDUM ALSO.

2    I GOT A LETTER ATTACHED TO THAT FROM MR. VASQUEZ'S WIFE, WHO

3    LIVES IN RENO, AND I'VE CONSIDERED THE LETTER FROM HER.

4         ALSO, THERE ARE SOME, I'LL CALL THEM, MEDICAL RECORDS

5    ATTACHED AS EXHIBIT B.  AND I HAVE REVIEWED THOSE AS WELL.  THE

6    UNITED STATES FILED A SENTENCING SUMMARY CHART.

7         I THINK YOUR RECOMMENDATION WAS CONTAINED WITHIN YOUR

8    SENTENCING MEMO, MS. CLARK.  SO THOSE ARE THE DOCUMENTS THAT I

9    HAVE REVIEWED WITH RESPECT TO SENTENCING.

10        HAVE I MISSED ANYTHING WITH REGARD TO SENTENCING?

11        MR. DESHONG:  NOT FROM THE GOVERNMENT, YOUR HONOR.

12        MS. CLARK:  NO, YOUR HONOR.

13        THE COURT:  OKAY.  THERE'S ALSO A -- BEFORE WE EVEN

14   GET TO SENTENCING, THERE'S A MOTION THAT HAS BEEN FILED ON

15   BEHALF OF THE DEFENDANT FOR A NEW TRIAL.

16        THE UPSHOT OF THE TRIAL IS THAT THE METHODS THAT LED

17   TO THE DEFENDANT'S APPREHENSION VIOLATED THE POSSE COMITATUS

18   ACT.  I'VE READ THE MOTION SUPPORTING THAT ARGUMENT.  THE

19   GOVERNMENT HAS OPPOSED IT.  THERE WERE EXHIBITS ATTACHED TO THE

20   MOTION.  AND I HAVE REVIEWED THOSE.

21        MS. CLARK, I'M HAPPY TO HEAR FROM YOU.  I THINK YOU'RE

22   SORT OF UP AGAINST IT HERE.  YOU HAVE THE LABORING OAR.  NINTH

23   CIRCUIT PRECEDENT IS SET FORTH IN *U.S. V. KHAN* AT 35 F.3D.  AND

24   IN THAT CASE, THE NINTH CIRCUIT FOUND THAT AERIAL RECOGNIZANCE

25   AND INTERCEPTION WAS NOT ILLEGAL UNDER THE POSSE COMITATUS ACT.

```
 1   THAT'S FOR STARTERS.  AND THEN THE GOVERNMENT ALSO POINTS TO A
 2   STATUTE THAT WAS ENACTED.
 3          THE POSSE COMITATUS ACT, OF COURSE, YOU KNOW FORBIDS
 4   ACTIVE PARTICIPATION OF THE MILITARY AND LAW ENFORCEMENT,
 5   UNLESS AUTHORIZED BY LAW.  AND THE GOVERNMENT TAKES THE
 6   POSITION THAT THIS WAS AUTHORIZED -- I CAN'T REMEMBER THE
 7   SPECIFIC SECTION.  IT WAS A 2016 STATUTE PASSED BY CONGRESS
 8   THAT SPECIFICALLY, ACCORDING TO THE GOVERNMENT, AUTHORIZED
 9   ASSISTANCE BY THE MILITARY IN THE FORM OF THE TYPE OF
10   RECOGNIZANCE SURVEILLANCE THAT WAS DONE HERE.
11          BUT -- YOU KNOW, I'M -- AS I SAID, IN THE FIRST
12   INSTANCE, THE PROBLEM IS YOU'RE RIGHT UP AGAINST *KHAN*.  AND IN
13   *KHAN*, IT WAS A BOAT, NOT A PERSON.  BUT THE PERPETRATORS AND
14   THOSE ULTIMATELY ARRESTED WERE ON THE BOAT.  AND THE GOVERNMENT
15   WAS ASSISTED IN LOCATING THEM AND TAKING THEM INTO CUSTODY BY
16   MILITARY AIRCRAFT RECOGNIZANCE.
17          AND JUDGE O'SCANNLAIN AND A UNANIMOUS PANEL IN THAT
18   CASE FOUND THAT THAT WAS JUST NOT ACTIVE ASSISTANCE BY THE
19   MILITARY; AND, THEREFORE, DID NOT VIOLATE THE POSSE COMITATUS
20   ACT.  THE GIST OF THIS IS, A HELICOPTER FLEW OVER IN
21   COORDINATION WITH THE BORDER PATROL'S ATTEMPT TO FIND THE
22   PEOPLE THAT HAD COME IN.
23          AND AS I UNDERSTAND IT, THE WIND FROM THE HELICOPTER
24   BLEW THE DEFENDANT'S SHIRT UP, AND THEY SPOTTED HIM HIDING
25   UNDER A BUSH.  THE GOVERNMENT TAKES THE POSITION -- I SUPPOSE
```

1   THE THIRD ARGUMENT IS THAT HE WOULD HAVE BEEN FOUND, ANYWAY.

2   SO THERE WAS INEVITABLE DISCOVERY HERE.  BUT I DON'T EVEN THINK

3   WE NEED TO GET TO THAT IF THE FIRST TWO ISSUES ARE SOLID.

4           SO I'M HERE TO HEAR FROM YOU.

5           MS. CLARK:  I DO NOTE -- AND I NOTED THIS IN MY

6   BRIEFING -- THAT THIS EXACT ISSUE IS CURRENTLY ON APPEAL.  IN

7   *HERNANDEZ-GARCIA*, THERE WAS AN ORAL ARGUMENT ON THE 10TH OF

8   FEBRUARY.  THAT CASE HAS NOT YET BEEN DECIDED.  SO IT HAS THE

9   SPECIFIC ARGUMENT, WHICH IS SLIGHTLY DIFFERENT THAN OTHERS THAT

10  HAVE BEEN RAISED, HAS BEEN DENIED BY A DIFFERENT DISTRICT

11  COURT.

12          THE COURT:  TWO DIFFERENT JUDGES; RIGHT?  JUDGE

13  MOSKOWITZ AND JUDGE CURIEL?

14          MS. CLARK:  I KNOW ABOUT JUDGE CURIEL, YOUR HONOR.  I

15  HAVE NO --

16          THE COURT:  I THINK THE GOVERNMENT POINTS OUT, DIDN'T

17  JUDGE MOSKOWITZ ALSO DENY THIS MOTION?

18          MR. DESHONG:  HE DID.  AND *HERNANDEZ-GARCIA* IS MY

19  CASE, SO I WILL SAY THAT INVOLVED A MARINE SCOPE OPERATOR.  MY

20  RECOLLECTION FROM READING THE DOCUMENT ON MOSKOWITZ'S CASE, WAS

21  IT WAS MORE SIMILAR TO THIS WHERE HE WAS OBSERVED INSIDE THE

22  UNITED STATES.  WHEREAS, *HERNANDEZ* WAS A LITTLE AMBIGUOUS

23  BECAUSE HE WAS OBSERVED RIGHT AT THE BORDERLINE.

24          THE COURT:  OKAY.

25          MS. CLARK:  BUT THE ARGUMENT THAT WE'RE MAKING HERE

1    TODAY, YOUR HONOR, IS THAT THE SECTION 274 AUTHORIZES

2    ASSISTANCE FOR SOMEBODY WHO IS COMING INTO THE UNITED STATES.

3    BUT FOR SOMEBODY LIKE MR. VASQUEZ, WHO WAS FIRST SPOTTED WELL

4    WITHIN THE UNITED STATES BOUNDARY --

5          THE COURT:  WHAT ABOUT THE PRINCIPAL POINT, THOUGH,

6    THAT THIS IS NOT CONSIDERED ACTIVE ASSISTANCE IN LIGHT OF THE

7    NINTH CIRCUIT PRECEDENT THAT'S BEEN AROUND SINCE, WHAT, LATE

8    '80S.

9          MS. CLARK:  AND I --

10         THE COURT:  *KHAN* HAS NOT BEEN OVERRULED.  AND *KHAN*

11   SAYS THAT -- AND I'M READING RIGHT FROM IT -- "THE DISTRICT

12   COURT FOUND THAT THE NAVY PARTICIPATED IN THE OPERATION WHICH

13   LED TO THE APPREHENSION OF THE DEFENDANT BY PROVIDING SHIPS,

14   COMMUNICATION ON THE LUCKY STAR'S POSITION" -- THE LUCKY STAR

15   WAS THE BOAT THAT THE DEFENDANTS WERE ON WITH THE DOPE ON IT --

16   "AERIAL RECOGNIZANCE AND INTERCEPTION OF THE LUCKY STAR.  NONE

17   OF THE NAVY'S ACTIVITIES WAS ILLEGAL."

18         MS. CLARK:  AND, YOUR HONOR, I'M NOT FAMILIAR WITH

19   *KHAN*.  AND I'M NOT FAMILIAR WITH WHETHER IN *KHAN* THEY WERE

20   FIRST SPOTTED WITHIN THE UNITED STATES OR COMING INTO THE

21   UNITED STATES.

22         THE COURT:  I DON'T KNOW HOW THAT MAKES A DIFFERENCE.

23   I MEAN, THE MILITARY IS FORBIDDEN UNDER THE POSSE COMITATUS ACT

24   FROM ASSISTING LAW ENFORCEMENT, WHETHER IN OR OUTSIDE; RIGHT?

25         MS. CLARK:  NO, YOUR HONOR.  THERE IS SOME -- THERE IS

1  AN ARGUMENT THAT THE MILITARY CAN ASSIST IN ARRESTING SOMEBODY

2  IF THEY SPOT THAT PERSON COMING INTO THE UNITED STATES.  AND

3  THIS SPECIFIC ARGUMENT THAT I'M MAKING, MR. VASQUEZ WAS WELL

4  WITHIN THE UNITED STATES.  AND THAT'S WHY WE BELIEVE THAT THERE

5  IS A VIOLATION HERE.

6        AGAIN, I DO ACKNOWLEDGE THAT THIS ARGUMENT HAS BEEN

7  DENIED BY TWO OTHER -- TWO OTHER DISTRICT COURT JUDGES AND IS

8  CURRENTLY ON APPEAL.  I WOULD ALSO ARGUE THAT THE 2016 NDAA,

9  THERE'S A NEW NATIONAL DEFENSE -- I THINK IT'S AUTHORIZATION

10 ACT ISSUED EVERY YEAR.  AND SO THERE ARE -- THERE'S A 2020

11 VERSION THAT DOES NOT HAVE THE SAME AUTHORIZATIONS.  THE 2019

12 VERSION DID NOT HAVE THE SAME AUTHORIZATIONS WITH REGARD TO

13 MILITARY ASSISTANCE.

14        I'M SORRY.  I WOULD ARGUE THAT THE 2016 NDAA DID NOT

15 APPLY AT THE TIME OF HIS ARREST.  AND ALSO THAT BECAUSE HE WAS

16 WELL WITHIN THE UNITED STATES, THE MILITARY SHOULD NOT HAVE

17 BEEN INVOLVED IN HIS APPREHENSION.

18        THE COURT:  OKAY.  MR. DESHONG?

19        MR. DESHONG:  I GUESS THERE'S A FEW POINTS TO RESPOND

20 TO.  AND I GUESS WE DID NOT BRIEF THE -- WHETHER, SORT OF, THE

21 SURVIVABILITY OF THE 2016 NATIONAL DEFENSE AUTHORIZATION ACT,

22 BECAUSE THAT ARGUMENT WAS NOT IN DEFENDANT'S MOTION.  WHEREAS,

23 THAT ARGUMENT WAS MADE AND DENIED BY JUDGE CURIEL IN THE

24 *HERNANDEZ-GARCIA* AND *RIOS-MONTANO*.  SO I'LL SORT OF PUT THAT

25 ASIDE.  AND IF THE COURT HAS QUESTIONS, WE COULD SUBMIT -- WE'D

1    ASK TO SUBMIT FURTHER BRIEFING ON IT.

2            IN TERMS OF THE ARGUMENT ABOUT THE AUTHORIZATION,

3    DEFENSE IS TALKING ABOUT THIS 1981 STATUTE THAT SAYS -- REFERS

4    TO THE MILITARY DOING SURVEILLANCE OF SURFACE TRAFFIC, AND

5    WHETHER IT STARTS OUTSIDE THE UNITED STATES, IS REFERENCED

6    THERE.

7            OUR POSITION IS THAT THAT'S NOT THE APPLICABLE

8    AUTHORITY HERE BECAUSE THERE'S A MORE RECENT, MORE SPECIFIC

9    AUTHORITY IN THE 2006 NATIONAL DEFENSE AUTHORIZATION ACT.

10           THE COURT:  IS IT '6 OR '16?

11           MR. DESHONG:  '16.  THANK YOU, YOUR HONOR.  I

12   APOLOGIZE FOR MISSPEAKING.

13           WHICH VERY CLEARLY GIVES THE MILITARY ADDITIONAL

14   AUTHORIZATION TO PARTICIPATE IN A VERY SPECIFIC PART OF THE

15   UNITED STATES, THE SOUTHERN LAND BORDER.  AND THAT -- AND IT'S

16   REFERENCED AT THE BOTTOM OF PAGE 7 IN THE GOVERNMENT'S

17   RESPONSE.  VERY SPECIFICALLY INCLUDES AUTHORIZATION TO USE

18   MANNED AIRCRAFT, WHICH IS WHAT HAPPENED HERE.

19           AND SO OUR POSITION ON, ONE, IS THAT THIS TYPE OF

20   ACTIVITY WAS SPECIFICALLY AUTHORIZED BY CONGRESS IN THAT

21   STATUTE AND THAT AUTHORIZATION SURVIVES.  THE ARGUMENT IN THE

22   OTHER CASE IS THAT THIS WAS, ESSENTIALLY, AN APPROPRIATION BILL

23   AND DID NOT SURVIVE, WHICH AS I MENTIONED, HAS BEEN REJECTED.

24           SECONDLY, AS THE COURT NOTES, THIS TYPE OF ASSISTANCE

25   IS NOT IN VIOLATION OF THE POSSE COMITATUS ACT, REGARDLESS,

1    BECAUSE THE MILITARY IS NOT INTERACTING WITH THE DEFENDANT.

2          IN OTHER CASES, THE MILITARY MAY HAVE BEEN OPERATING A

3    SCOPE AND FIRST SPOTTED THE DEFENDANT.  WE DON'T EVEN HAVE THAT

4    HERE.  HE'S CORNERED BY MULTIPLE BORDER PATROL AGENTS ASSISTED

5    BY A BORDER PATROL SCOPE OPERATOR.  AND HIS TRIAL TESTIMONY

6    SHOWS, LITERALLY, ALL THE HELICOPTER DID WAS MOVE THE AIR TO

7    FLAP HIS CLOTHES AND SORT OF PUSH DOWN THE BRUSH SO THAT HE WAS

8    SPOTTED AND APPREHENDED.  AND THAT THAT MINIMAL INVOLVEMENT

9    DOES NOT VIOLATE THE ACT, REGARDLESS.

10         AND AS THE GOVERNMENT NOTES IN ITS BRIEF, THAT HIS

11   DISCOVERY WAS INEVITABLE.  HE WAS SURROUNDED, AND THERE WAS A

12   SCOPE OPERATOR MONITORING THE AREA.  HE WAS NOT GETTING AWAY AT

13   THAT POINT.

14         AND SO IN LIGHT OF THESE ARGUMENTS AND PUTTING ASIDE

15   THE FACT THAT THIS MOTION IS UNTIMELY, YOU KNOW, THE

16   GOVERNMENT, UNLESS THE COURT HAS ANY QUESTIONS, WOULD SUBMIT ON

17   THOSE POINTS.

18         THE COURT:  ALL RIGHT.  THANK YOU, BOTH.

19         FIRST, THE COURT DENIES THE MOTION.  I BASE THE DENIAL

20   ON THIS:  *KHAN* IS GOOD LAW.  *KHAN* SPECIFICALLY CONCERNS AERIAL

21   RECOGNIZANCE ASSISTANCE BY THE MILITARY.  THAT'S WHAT HAPPENED

22   HERE.  *KHAN* SAYS THAT THAT IS NOT ACTIVE ASSISTANCE.  THAT THAT

23   IS MORE PASSIVE AND NOT FORECLOSED.

24         *KHAN* ADOPTS THE YUNIS -- Y-U-N-I-S -- TEST FROM THE

25   SECOND CIRCUIT.  APPLIES THAT TEST TO COME TO THAT CONCLUSION.

1    APPLICATION OF THAT TEST WOULD REACH THE SAME CONCLUSION HERE.

2          THE COURT NOTES THAT THERE IS A DIFFERENCE THAT

3    COUNSEL HAS MENTIONED, AND IT'S A DIFFERENCE THAT -- A

4    DISTINCTION BETWEEN THIS CASE AND THE *KHAN* CASE.  THE

5    DEFENDANTS IN *KHAN* WERE APPREHENDED IN INTERNATIONAL WATERS.

6          AND MS. CLARK POINTS OUT THAT THE CASE IN FRONT OF

7    JUDGE CURIEL I THINK ALSO WAS DIFFERENT IN THAT THE DEFENDANT

8    ALLEGEDLY WAS COMING INTO THE UNITED STATES AT THE TIME.  WAS

9    NOT ALREADY IN.  HERE, THE DEFENDANT WAS SUBSTANTIALLY WITHIN

10   THE UNITED STATES.

11         I DON'T THINK THAT DIFFERENCE IS DISPOSITIVE.  IT IS A

12   DIFFERENCE.  I ACKNOWLEDGE THAT.  BUT WHAT WE'RE TALKING ABOUT

13   HERE IS, YOU KNOW, IS IT A VICE?  IS IT PROHIBITED, WHETHER IN

14   OR OUT OF THE UNITED STATES, FOR THE MILITARY TO ASSIST LAW

15   ENFORCEMENT IN CARRYING OUT LAW ENFORCEMENT FUNCTIONS?  THE

16   ANSWER TO THAT IS YES SUBJECT TO THE DEFINITIONS THAT *KHAN*

17   GIVES AND ANY EXCEPTIONS THAT CONGRESS MAY PROMULGATE.

18         AND, HERE, THAT LEADS ME TO THE SECOND POINT.  THEY

19   PROMULGATED ONE.  I AGREE WITH THE GOVERNMENT'S SECOND ARGUMENT

20   AS WELL THAT THE DEPARTMENT OF DEFENSE -- IS IT A PROCUREMENT

21   ACT?  IS THAT WHAT IT WAS.

22         MR. DESHONG:  IT'S A NATIONAL DEFENSE AUTHORIZATION

23   ACT.

24         THE COURT:  NATIONAL DEFENSE AUTHORIZATION ACT.  I

25   FIND ALSO FORECLOSES THE ARGUMENT THAT POSSE COMITATUS WAS

1   VIOLATED HERE.

2          REMEMBER, POSSE COMITATUS SETS FORTH A RULE.  IT'S A

3   STATUTE.  IT'S NOT CONSTITUTIONAL, BUT SETS FORTH A RULE THAT

4   SAYS:  MILITARY SHALL NOT BE INVOLVED UNLESS -- UNLESS CONGRESS

5   GIVES THEM PERMISSION TO BE INVOLVED.

6          AND IN THIS CASE, I AGREE WITH THE GOVERNMENT'S

7   READING OF THE NATIONAL DEFENSE AUTHORIZATION THAT IN 2016,

8   PRECEDING THE EVENTS OF THIS CASE, THE GOVERNMENT -- CONGRESS

9   GAVE THE MILITARY AUTHORITY TO BE INVOLVED IN THE CAPACITY IN

10  WHICH THEY FUNCTIONED IN THIS CASE, WHICH WAS RECOGNIZANCE,

11  SURVEILLANCE, AND THE LIKE.

12          SO EVEN IF THIS DIDN'T -- EVEN IF THIS DIDN'T COMPLY

13  WITH THE *KHAN* TEST AND SOMEHOW, YOU KNOW, DESPITE THE VERY

14  SIMILARITY HERE THAT BOTH INVOLVED THE AERIAL RECOGNIZANCE,

15  WHICH WAS SAID NOT TO VIOLATE POSSE COMITATUS, ASSUMING THAT'S

16  WRONG, HERE THE OUT IS AND THE EXCEPTION IS THAT CONGRESS HAS

17  SPECIFICALLY AUTHORIZED THIS.

18          SO IT WOULDN'T VIOLATE POSSE COMITATUS.  THOSE ARE THE

19  PRINCIPAL REASONS THAT THE COURT RELIES ON IN DENYING THE

20  MOTION.  I DON'T KNOW.  I SUPPOSE THEY MAY HAVE CAUGHT

21  MR. VASQUEZ, ANYWAY.  AS THE GOVERNMENT SAYS, THE TESTIMONY

22  ESTABLISHES THAT THEY SORT OF HAD HIM SURROUNDED.  IT MIGHT

23  HAVE BEEN A MATTER OF TIME.  BUT THAT'S SUBJECT TO SOME

24  SPECULATION THAT MAYBE HE MIGHT HAVE OUTFOXED THEM OR STAYED

25  UNDER A BUSH LONG ENOUGH OR THEY GOT TIRED AND WENT AWAY OR --

1   SO I DON'T GET TO THE INEVITABLE-DISCOVERY-TYPE THING OR THE

2   INEVITABLE APPREHENSION OF THE DEFENDANT.

3          I THINK THE TWO PRINCIPAL REASONS I'VE CITED ARE

4   SUFFICIENT TO JUSTIFY DENIAL OF THE MOTION.  SO, AGAIN, THE

5   MOTION IS DENIED.

6          MS. CLARK, I'M HAPPY TO HEAR FROM YOU ON BEHALF OF

7   MR. VASQUEZ WITH SENTENCING.

8          MS. CLARK:  THANK YOU, YOUR HONOR.

9          LOOKING AT THE PSR AND LOOKING AT MR. VASQUEZ'S

10  CRIMINAL HISTORY, IT PAINTS A DIFFERENT PICTURE OF HIM THAN I

11  THINK IT DOES WHEN YOU ACTUALLY SPEAK WITH HIM AND TALK WITH

12  HIM.

13         MR. VASQUEZ IS SOMEBODY WHO LOVES HIS FAMILY AND HAS

14  ALWAYS TALKED ABOUT HIS WIFE, MELISSA, AND HOW DESPERATE HE IS

15  TO HELP HER.  SHE'S BEEN SICK FOR SOME TIME.  SHE'S HAD

16  DIABETES AND OTHER HEALTH ISSUES.

17         BUT AT THE END OF 2020, SHE STARTED TO FEEL VERY, VERY

18  SICK.  AND THAT IS WHEN HE WAS RELEASED FROM CUSTODY.  AND HE

19  FELT COMPELLED TO COME TO THE UNITED STATES TO TRY TO HELP HER.

20  SHE WAS NOT ABLE TO WORK BECAUSE SHE STARTED TO GO INTO

21  DIALYSIS THREE TIMES A WEEK.  AND THOSE WERE THE MEDICAL

22  DOCUMENTS THAT I DID PROVIDE.

23         I DID NOT PROVIDE THE YEAR'S WORTH OF MEDICAL

24  DOCUMENTS LEADING UP TO THE ESCALATION.  BUT IN OCTOBER, SHE

25  WAS FEELING VERY SICK AND WENT TO THE DOCTOR IN NOVEMBER, AND

```
 1   THAT'S WHEN THEY REALIZED HOW SERIOUS THINGS HAD GOTTEN.  AND

 2   THAT'S WHEN SHE STARTED TO GO INTO DIALYSIS.

 3          IT'S EXTRAORDINARILY DIFFICULT FOR MR. VASQUEZ.  IT

 4   HAS BEEN DIFFICULT FOR A LONG TIME FOR HIM TO GO AWAY FROM HIS

 5   FAMILY.  BUT PHONE CALLS ARE SOMETHING.  AND HE HAS BEEN ABLE

 6   TO SPEAK WITH HIS WIFE, SPEAK WITH HIS SON, SPEAK WITH HIS

 7   FAMILY, AND MAINTAIN THAT CONTACT.

 8          BUT HEARING HOW SICK SHE WAS, HE FELT AN OVERWHELMING

 9   DESPERATION.  AND THAT IS WHAT LED TO HIS RETURN TO THE UNITED

10   STATES.

11          AT SOME POINT, I THINK, I'VE SEEN -- I'M SURE YOUR

12   HONOR HAS -- THAT PEOPLE HIT A LEVEL WHERE THEY DON'T WANT TO

13   SPEND THE REST OF THEIR LIVES IN CUSTODY.  AND FOR MR. VASQUEZ,

14   HE'S AT THAT POINT.  HE UNDERSTANDS THAT EVERY TIME HE IS

15   TRYING TO COME TO THE UNITED STATES, HE'S ARRESTED.  HE IS --

16   DOES NOT WANT TO LIVE THE REST OF HIS DAYS IN A JAIL CELL.

17          HE HAS SEEN HOW DIFFICULT THAT IS FOR HIS FAMILY.

18   THAT IT'S MUCH BETTER FOR THEM TO KNOW, TO HAVE THE PEACE OF

19   MIND THAT HE IS SOMEWHERE SAFE AS OPPOSED TO IN A JAIL CELL.

20          SO HIS ENTIRE MOTIVATION HERE, YOUR HONOR, WAS TO

21   VISIT HIS WIFE, TO HELP HER, TO WORK SO THAT SHE WOULD NOT HAVE

22   TO WORRY ABOUT MONEY AS MUCH, TO HELP HER WITH HER MEDICAL

23   APPOINTMENTS.  JUST TO BE THERE FOR HIS WIFE.

24          THE COURT:  HOW LONG HAS HE BEEN MARRIED TO HIS

25   CURRENT WIFE?
```

1          MS. CLARK:  THEY MET IN 1997, YOUR HONOR, AND MARRIED

2    IN 1998.

3          THE COURT:  OKAY.

4          MS. CLARK:  AND, AGAIN, HAS BEEN IN CUSTODY.  SO MUCH

5    OF THEIR RELATIONSHIP HAS DEVELOPED OVER THE PHONE.  AND I

6    THINK THAT, IN AND OF ITSELF, SPEAKS TO THEIR DEVOTION TO ONE

7    ANOTHER.

8          THE COURT:  WAS SHE THE VICTIM IN THE TWO WIFE-BEATING

9    CONVICTIONS THAT HE SUFFERED?  ONE IN 1999, THAT WOULD HAVE

10   BEEN AFTER THEY WERE MARRIED, AND THEN AGAIN IN 2008?  WAS SHE

11   THE VICTIM IN THOSE CASES?

12         MS. CLARK:  YES, YOUR HONOR.  I WILL NOTE ABOUT THOSE,

13   THOUGH, FOR THE 1999, MR. VASQUEZ WAS JUST 22 YEARS OLD.  HE

14   WAS OLDER, OBVIOUSLY, IN 2008.  BOTH WERE MISDEMEANORS.

15         THE COURT:  RIGHT.

16         MS. CLARK:  FOR THE FIRST CONVICTION, IT IS UNCLEAR

17   HOW MUCH JAIL TIME.  IT APPEARS AS IF HE DID COMMUNITY SERVICE.

18   AND THE SECOND, HE DID HAVE A 30-DAY STINT IN JAIL.

19         BUT BOTH OF THOSE, MR. VASQUEZ ACKNOWLEDGES, WERE

20   MISTAKES THAT WERE MADE AND ARGUMENTS THAT THEY HAD.  BUT

21   THEY'RE CERTAINLY NOT INDICATIVE OF THE DECADES-LONG

22   RELATIONSHIP.

23         THE COURT:  IT WAS MORE THAN AN ARGUMENT.  AT LEAST IN

24   THE SECOND ONE, HE HIT HER HARD IN THE FACE IN THE PRESENCE OF

25   HIS SON.  AND THEN WHEN THE POLICE WERE CALLED, HE FLED, AND HE

```
 1    WAS ARRESTED SIX WEEKS LATER.  THAT'S MORE THAN AN ARGUMENT.

 2            NO WOMAN SHOULD HAVE HANDS LAID ON HER IN VIOLENCE OR

 3    FORCE AND, PARTICULARLY, BEING SLUGGED IN THE FACE.  THAT'S NOT

 4    AN ARGUMENT.  WHATEVER THE SENTENCE WAS, IT WAS.  BUT THAT'S A

 5    VERY SERIOUS THING.

 6            I MENTION THAT ONLY BECAUSE I -- SOME CONTEXT ABOUT

 7    THE -- WHAT YOU'RE TELLING ME NOW ABOUT HIS CONCERN FOR THIS

 8    WOMAN WHO HAS TWICE BEEN THE VICTIM OF DOMESTIC VIOLENCE AT HIS

 9    HANDS.

10            MS. CLARK:  IT'S UNCLEAR WHAT THE LEVEL WAS IN THE

11    FIRST CONVICTION, YOUR HONOR.  IT'S NOT INDICATED HERE, AND I

12    DON'T HAVE THAT INFORMATION SO I CAN'T SPECULATE ABOUT WHAT

13    OCCURRED THERE WITH THE -- ONLY SEEING THAT HE DID COMMUNITY

14    SERVICE AS PART OF HIS SENTENCE.

15            WITH REGARD TO THE 2008 CONVICTION, YOUR HONOR, WE DO

16    HAVE SOME ADDITIONAL INFORMATION IN THE PROBATION REPORT.  BUT

17    IT WAS IN 2008, YOUR HONOR.  AND MR. VASQUEZ-PEREZ CAME INTO

18    THE UNITED STATES IN 2020.  HE AND HIS WIFE'S RELATIONSHIP OVER

19    THOSE 12 YEARS, WHILE HE HAD BEEN IN CUSTODY FOR A LARGE

20    PORTION OF THAT, HAS DEVELOPED AND CHANGED.  AND PEOPLE CHANGE.

21    PEOPLE MAKE MISTAKES.  AND PEOPLE LEARN FROM THEM AND GROW FROM

22    THEM.

23            AND HIS RELATIONSHIP WITH HIS WIFE CONTINUED TO

24    THRIVE, EVEN THOUGH HE WAS NOT ALWAYS THERE WITH HER.  THE TWO

25    OF THEM HAVE A VERY CLOSE RELATIONSHIP, WHICH IS EVIDENCED IN
```

1    HER LETTER THAT SHE WROTE TO THE COURT AND THE FACT THAT SHE

2    SENT OVER HER MEDICAL DOCUMENTS TO CORROBORATE HIS REASON FOR

3    COMING INTO THE UNITED STATES.

4           THE TWO OF THEM HAVE RECONCILED.  AND THEY LOVE EACH

5    OTHER VERY MUCH.  AND SO, YES, MR. VASQUEZ DID MAKE MISTAKES IN

6    THE PAST AND PARTICULARLY MISTAKES WITH HIS WIFE, AND HE

7    TREMENDOUSLY HAS REGRET FOR THOSE, BUT HE'S LEARNED FROM THEM,

8    AND HE'S GROWN FROM THEM.  AND IT'S SOMETHING THAT THE TWO OF

9    THEM HAVE BEEN ABLE TO REBUILD.  THAT SAID, HE DOESN'T WANT TO

10   BE FACING ADDITIONAL TIME IN CUSTODY FOR CONTINUING TO TRY TO

11   COME INTO THE UNITED STATES.

12          HE KNOWS IT'S GOING TO BE DIFFICULT FOR HER TO TRY TO

13   RELOCATE TO MEXICO GIVEN HER HEALTH PROBLEMS.  BUT THE TWO HAVE

14   A VERY STRONG PHONE CONNECTION ALREADY AND CAN CONTINUE THEIR

15   RELATIONSHIP IN THAT WAY.

16          HE HAS HIT THE POINT WHERE HE'S SEEN HOW MUCH TIME HE

17   HAS DONE IN CUSTODY AND -- REPEATEDLY.  AND THAT'S NOT

18   SOMETHING THAT HE WANTS TO CONTINUE.  IT'S NOT SOMETHING HE

19   WANTS TO EVER BE BACK BEFORE ANY COURT, LOOKING AT TIME.

20          I WILL ALSO NOTE, YOUR HONOR, THAT IT APPEARS AS

21   THOUGH THERE'S A SUPERVISED RELEASE VIOLATION PENDING.  IT

22   DOESN'T APPEAR THAT IT HAS BEEN TRANSFERRED.  AND SO I WOULD

23   IMAGINE THAT AFTER MR. VASQUEZ IS RELEASED ON THIS CASE, HE

24   WOULD STILL BE FACING ADDITIONAL TIME FOR THE VIOLATION.  AND

25   SO MY SENTENCING FOR THE RECOMMENDATION IS CONTEMPLATING THAT

```
 1   HE COULD BE DOING TWO ADDITIONAL YEARS FOR THE VIOLATION AFTER

 2   SERVING THIS REENTRY SENTENCE, YOUR HONOR.

 3            THE COURT:  ALL RIGHT.  THANK YOU, MS. CLARK.

 4            MR. VASQUEZ, I'M HAPPY TO HEAR FROM YOU BEFORE I MAKE

 5   A DECISION ON THE SENTENCE.  WHATEVER YOU WANT ME TO KNOW.

 6            THE DEFENDANT:  WELL, I DON'T HAVE A LOT TO SAY.  BUT

 7   I WOULD LIKE TO SAY THAT THE REASON THAT I CAME HERE WAS

 8   BECAUSE I WANTED TO HELP MY WIFE.

 9            THE COURT:  ALL RIGHT.

10            THE DEFENDANT:  THAT IS THE ONLY REASON.  IT'S BEEN

11   YEARS SINCE I'VE SEEN HER.  AND I HAVE NOT SEEN MY SON EITHER.

12            THE COURT:  ALL RIGHT.

13            THE DEFENDANT:  THAT'S IT, YOUR HONOR.

14            THE COURT:  I HAVE A QUESTION BEFORE I HEAR FROM

15   GOVERNMENT COUNSEL.

16            THE PROBATION OFFICER, I'M TRYING TO FIND IT HERE, BUT

17   PROBATION'S RECOMMENDED ACCEPTANCE OF RESPONSIBILITY HERE?

18            MS. PLATAS:  THAT'S CORRECT, YOUR HONOR.

19            THE COURT:  AND I DON'T -- I MEAN, THE GOVERNMENT

20   HASN'T RECOMMENDED THAT.  AND THAT WOULD FORECLOSE GIVING THE

21   ADDITIONAL POINT.  THAT HAS TO BE BASED ON THE GOVERNMENT'S

22   RECOMMENDATION.  BUT THE PROBATION RECOMMENDATION SAYS PLUS

23   THREE, SO ONE OF THEM IS OUT.

24            WHAT'S THE BASIS FOR THE OTHER TWO POINTS?  THIS IS A

25   FELLOW WHO WENT TO TRIAL, WHICH DOESN'T AUTOMATICALLY FORECLOSE
```

1  ACCEPTANCE.  BUT HE DID CHALLENGE HIS GUILT.  HE DIDN'T

2  TESTIFY.  BUT, YOU KNOW, THEY CHALLENGED WHETHER THE GOVERNMENT

3  COULD PROVE THE CASE.  THERE WAS A CHALLENGE TO THE DEPORTATION

4  RECORDS AND ALL.

5          TELL ME -- I DIDN'T SEE IT HERE -- IS IT IN HERE, WHAT

6  THE EXPLANATION IS FOR ACCEPTANCE?

7          MS. PLATAS:  YES, YOUR HONOR, ON PARAGRAPH 19.

8          THE COURT:  19.

9          MS. PLATAS:  YES.

10         THE COURT:  BOY, I THINK THAT'S A STRETCH.  DON'T YOU?

11  I DON'T WANT TO PUT YOU AT ODDS.  MAYBE THAT'S NOT A FAIR

12  QUESTION TO ASK YOU.

13         HERE'S WHAT PARAGRAPH 19 SAYS:  DURING AN IMMIGRATION

14  CHECK ON THE DAY OF HIS ARREST, HE HAD BEEN ARRESTED.

15  DEFENDANT SAID HE DIDN'T POSSESS THE PROPER IMMIGRATION

16  DOCUMENT TO ENTER OR REMAIN IN THE UNITED STATES.  HE DIDN'T

17  PROVIDE A POSTARREST STATEMENT OR A STATEMENT FOR THE OFFENSE

18  DURING THE PRESENTENCE INTERVIEW.

19         HE DID NOT SUPPRESS HIS MOTIVE, WHICH WAS TO HELP HIS

20  SICK WIFE, WHICH WE'VE HEARD ABOUT, OR KNOWING BEING IN THE

21  UNITED STATES ILLEGALLY, CONSIDERING THE -- IT APPEARS HE'S

22  DEMONSTRATED SOME LEVEL OF ACCEPTANCE.

23         THIS TOTALLY DISREGARDS THE GUIDELINE ADVICE WHICH IS,

24  IT'S A RARE CASE WHEN SOMEONE GOES TO TRIAL, CONTESTS HE'S

25  GUILTY, AND THEN IS CONVICTED, AND STILL QUALIFIES FOR

1   ACCEPTANCE.

2           YOU KNOW, MOREOVER, THERE'S NO MENTION HERE THAT HE

3   CAME BACK WITHIN EIGHT DAYS OF BEING EXPELLED FROM THE UNITED

4   STATES.  ALMOST IMMEDIATELY CAME RIGHT BACK.  I MEAN, IF THIS

5   FELLOW QUALIFIES FOR ACCEPTANCE OF RESPONSIBILITY, THEN KATIE

6   BAR THE DOOR.  EVERYBODY DOES.  RIGHT?

7           HE DIDN'T SPEAK WITH THE PROBATION OFFICER.  HE DIDN'T

8   MAKE A POSTARREST.  HE JUST SAID, HEY, HERE'S WHY I CAME BACK.

9   AND THE OFFICER THINKS HE GETS TWO POINTS OFF FOR THAT?  MY

10  GOODNESS, IT RENDERS THE WHOLE SECTION AND THE COMMENTARY TO

11  THAT SECTION MEANINGLESS.  I DISAGREE WITH IT.

12          MR. DESHONG, I'M HAPPY TO HEAR FROM YOU.

13          MR. DESHONG:  AND, JUST FOR THE RECORD, IN PROBATION'S

14  DEFENSE, I THINK AT THE TIME THEY CONTACTED OUR OFFICE, WE

15  HADN'T MADE A FINAL CALL YET.  AND THAT MAY HAVE PLAYED --

16          THE COURT:  WHAT'S THE CALL TO BE MADE HERE?  I MEAN,

17  I'M JUST ASTONISHED THAT YOU WOULD EVEN ACKNOWLEDGE IT.

18  THERE'S NO QUESTION THAT --

19          MS. CLARK, DID YOU ASK FOR IT?  I DIDN'T SEE THAT YOU

20  ASKED FOR IT HERE.

21          MS. CLARK:  YOUR HONOR, IN PARAGRAPH 7, THE AUSA

22  INFORMED THE PROBATION OFFICER THAT THEY INTENDED TO RECOMMEND

23  THE REDUCTION FOR ACCEPTANCE --

24          THE COURT:  YEAH.  OKAY.

25          MR. DESHONG, I GUESS YOU HAVE THE FLOOR THEN.  TELL ME

1    WHAT THE BASIS IS FOR THAT, IN CONTRADICTION OF THE GUIDANCE

2    GIVEN BY THE SENTENCING COMMISSION AND EVERYTHING ELSE IN THIS

3    CASE.  THIS IS A GUY WHO IS NOW -- BY THE WAY, THIS IS HIS

4    FIFTH, FIFTH 1326.

5             LAST TIME, WHILE HE WAS IN CUSTODY, HE PUT A LOCK IN

6    HIS SOCK AND BEAT ANOTHER PRISONER UP AND WAS CONVICTED OF

7    ANOTHER FELONY WHILE HE WAS IN CUSTODY.  THAT WASN'T THE FIRST

8    TIME THAT HE'S BEEN VIOLENT WHILE IN CUSTODY.

9             HE'S COME BACK.  HE'S GOT SEVEN DEPORTATIONS.  TWO

10   VOLUNTARY RETURNS.  AS I SAID, BACK WITHIN EIGHT DAYS.  NOW,

11   SPEAK SLOWLY AND TELL ME WHY YOU WOULD EVEN CONSIDER ACCEPTANCE

12   OF RESPONSIBILITY HERE?  I DON'T WANT TO MISS ANY ASPECT OF THE

13   EXPLANATION.

14            MR. DESHONG:  THE COURT'S POINT IS TAKEN.

15            SIMPLY, AT THE TIME THE PROBATION CONTACTS US, WE WERE

16   LEANING TOWARDS NOT.  HADN'T MADE A FINAL CALL.  AND I THINK

17   THERE MAY HAVE BEEN A MISCOMMUNICATION.

18            THE COURT:  WHY WAS THAT EVEN UP IN THE AIR?  YET, THE

19   CASE HAD BEEN TRIED ALREADY, AND YOU KNEW EVERYTHING THAT I'VE

20   JUST GONE OVER.  DIDN'T YOU?

21            MR. DESHONG:  WE WERE CERTAINLY LEANING TOWARDS NO.

22   BUT WE -- WE HAD HAD -- AND WE'RE NOT RECOMMENDING IT NOW, YOUR

23   HONOR.  SO I JUST SIMPLY DIDN'T WANT PROBATION TO SORT OF

24   TAKE --

25            THE COURT:  IT'S ASTONISHING TO ME THAT IT WAS EVEN IN

1   THE UNIVERSE OF CONSIDERATIONS.

2         MR. DESHONG:  WE WAIT TO SEE THE DEFENDANT'S STATEMENT

3   OF DEFENSE IN THE PSR JUST, YOU KNOW, IN THE OFF-CHANCE THERE'S

4   THIS EXTREMELY HEARTFELT ALLOCUTION REGARDING ACCEPTANCE AND

5   RESPONSIBILITY FOR HIS CONDUCT.

6         BUT CERTAINLY GIVEN THE CONTEXT, IT WOULD HAVE HAD TO

7   HAVE BEEN FAIRLY EXTRAORDINARY TO MERIT IT.  AND I THINK IN

8   THIS CASE, YOUR HONOR, TO JUST SHIFT GEARS A LITTLE BIT, I

9   THINK THERE IS SOME REASON TO BE SKEPTICAL OF THE DEFENDANT'S

10  STORY.  I WILL NOTE IN PARAGRAPH 55 OF THE PSR, IT INDICATES HE

11  HAD NOT SPOKEN TO HIS WIFE IN SEVERAL YEARS.

12        PRESUMABLY FROM TODAY, WHICH WOULD MEAN HE DIDN'T HAVE

13  ANY CONTACT WITH HER AT THE TIME OF HIS ARREST.  AND I WOULD

14  ALSO NOTE THAT HE WAS --

15        THE COURT:  NOR HAS HE WORKED FOR SEVERAL YEARS.  IF

16  YOU LOOK AT PARAGRAPH 73, REPORTED HE'S NOT SECURED WORK FOR

17  MANY YEARS.  HE HASN'T WORKED WHILE IN MEXICO.

18        SO IT DOESN'T SOUND LIKE IF HE'S NOT WORKING, ANY

19  MONEY IS BEING SENT UP TO HELP WITH HER SUPPORT OR TO HIS KID.

20        MR. DESHONG:  I WOULD ALSO NOTE IN HER LETTER, SHE

21  INDICATES HER MEDICAL TROUBLES BEGAN IN NOVEMBER 2020, AND HE

22  WAS ARRESTED IN OCTOBER OF 2020.

23        I HAVEN'T SEEN THE DETAILED RECORDS.  IT'S CLOSE

24  ENOUGH THAT POSSIBLY SHE JUST MIXED UP THE DATES.  BUT I THINK

25  THERE'S REASON TO, SORT OF, BE SKEPTICAL OF THIS ALTRUISTIC

1    MOTIVE HE'S PROVIDING FOR HIS -- YOU KNOW, THE COMMISSION OF

2    THIS OFFENSE.

3            AND I THINK THE COURT'S HIT ON THE OTHER SORT OF

4    CONCERNS.  HE'S GOT MULTIPLE DEPORTATIONS.  MULTIPLE CRIMINAL

5    IMMIGRATION OFFENSES, INCLUDING OLDER ONES WITH SENTENCES AS

6    HIGH AS 72 MONTHS, AND MULTIPLE OFFENSES INVOLVING VIOLENCE

7    AGAINST OTHER INDIVIDUALS, INCLUDING HIS MOST RECENT OFFENSE.

8            AND I THINK THAT MOST RECENT OFFENSE, WHICH, I MEAN,

9    INVOLVES BEATING ANOTHER PERSON WITH A LOCK AND A SOCK, WHICH

10   IMPLIES SOME MODICUM OF FORETHOUGHT IN ORDER TO CARRY SUCH A

11   WEAPON TO BE PREPARED FOR ASSAULT, I THINK JUSTIFIES A

12   SUBSTANTIAL INCREASE OVER HIS PRIOR 1326 SENTENCE, WHICH I

13   THINK WAS IN THE 20-MONTH RANGE.

14           AND SO GIVEN THAT HISTORY, HIS GUIDELINES FALL IN THE

15   77- TO 96-MONTH RANGE.  WE THINK THE MIDDLE OF THAT RANGE IS AN

16   APPROPRIATE PLACE TO LAND.  AND WE'RE RECOMMENDING AN 84-MONTH

17   SENTENCE AS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO DETER

18   HIM SPECIFICALLY FROM COMMITTING THIS CRIME AND PROMOTE RESPECT

19   FOR THE RULE OF LAW.

20           MS. CLARK:  YOUR HONOR, MAY I RESPOND?

21           THE COURT:  SURE.

22           MS. CLARK:  THANK YOU.

23           INITIALLY, YOUR HONOR, MR. VASQUEZ HAS NOT SEEN HIS

24   WIFE IN PERSON IN SEVERAL YEARS.  BUT THEY ARE IN REGULAR

25   CONTACT OVER THE PHONE.  MR. VASQUEZ HAS NOT WORKED BECAUSE

1   HE'S BEEN IN CUSTODY BUT NOT -- WHEN HE WAS OUT OF CUSTODY,

2   WITH THE EXCEPTION OF THESE EIGHT DAYS IN BETWEEN HIS --

3           THE COURT:  WAS HE IN CUSTODY IN MEXICO WHEN HE WAS

4   THERE?

5           MS. CLARK:  NO, YOUR HONOR.  THERE WAS AN EIGHT-DAY

6   WINDOW.

7           THE COURT:  I'M TALKING EVEN BEFORE THEN.  I MEAN,

8   HE'S BEEN DEPORTED NUMEROUS TIMES.

9           MS. CLARK:  YES, YOUR HONOR.  AND HE HAS WORKED IN

10  MEXICO AND IN THE UNITED STATES, AS IS INDICATED IN PARAGRAPH,

11  I BELIEVE IT WAS, 73.  HE HAS WORKED IN CONSTRUCTION.  HE HAS

12  DONE LANDSCAPING.

13          THE COURT:  73 SAYS HE HAS NOT WORKED IN MEXICO.  THIS

14  APPARENTLY CAME FROM HIM.

15          MS. CLARK:  HE HAS NOT WORKED IN THE LAST SEVERAL --

16  HE HAS NOT WORKED IN THE LAST SEVERAL YEARS, YOUR HONOR,

17  BECAUSE HE'S BEEN IN CUSTODY.  BUT BEFORE THAT, HE WAS IN THE

18  UNITED STATES, AND HE WAS WORKING.  WORKING IN LANDSCAPING.

19  WORKING, MOSTLY, IN CONCRETE.

20          HE WOULD DO, LIKE, FINISHING WORK OR SIDEWALKS,

21  DRIVEWAYS, PORCHES, THAT KIND OF THING.  THAT'S WHERE HIS

22  SPECIALTY LIES WITH THE CONSTRUCTION.  I MEAN, HE WORKED IN THE

23  UNITED STATES FOR A LONG TIME ANY TIME HE WAS NOT IN CUSTODY.

24          WITH REGARD TO THE SPECULATION, HIS WIFE CONFIRMED TO

25  MY OFFICE -- AS AN OFFICER OF THE COURT, I CAN SAY THAT HIS

```
 1    WIFE DID CONFIRM THAT SHE'S BEEN SICK FOR A LONG TIME.  AND
 2    THAT SHE WAS FEELING VERY SICK IN OCTOBER.  SHE DID TALK WITH
 3    HIM ABOUT COMING BACK TO THE UNITED STATES.
 4          AND THAT IN NOVEMBER, SHE WENT TO THE DOCTOR AND
 5    LEARNED THAT THINGS HAD ESCALATED, AND SHE REQUIRED DIALYSIS.
 6    AND THAT'S WHY THE DOCUMENTATION I BELIEVE BEGINS IN NOVEMBER
 7    AND HER LETTER STATES NOVEMBER.  BUT SHE HAS BEEN SICK FOR A
 8    VERY LONG TIME.  AND SHE DID TALK WITH MR. VASQUEZ ABOUT THAT.
 9    AND SHE TOLD MY OFFICE THAT.
10          WITH REGARD TO ACCEPTANCE, YOUR HONOR, IN THE TRIAL, I
11    WOULD NOTE THAT THERE WAS REASONABLE DOUBT -- INFERENCES OF
12    REASONABLE DOUBT ARGUED TO THE JURY, INCLUDING DOCUMENTS THAT
13    WERE SHOWN, NOT THAT MR. VASQUEZ HAD NEVER BEEN DEPORTED.  BUT,
14    SIMPLY, THAT THE DOCUMENTS PRESENTED AT TRIAL WERE
15    INSUFFICIENT.
16          THE COURT:  RIGHT.
17          MS. CLARK:  AND SO IT WAS REASONABLE INFERENCES OF --
18          THE COURT:  I DON'T DISAGREE, MS. CLARK.  HE HAD EVERY
19    RIGHT TO TELL THE GOVERNMENT, WHO'S ACCUSED HIM OF A SERIOUS
20    OFFENSE, PROVE IT.  AND I IMPOSE NO PENALTY FOR THAT.  BUT IT'S
21    QUITE A DIFFERENT THING TO SAY, OH, BUT HE'S ACCEPTED
22    RESPONSIBILITY BECAUSE HE MUTTERS TO THE PROBATION OFFICER AT
23    SOME POINT, WELL, I DID THIS BECAUSE MY WIFE WAS SICK.  I DON'T
24    WANT TO SAY ANYTHING MORE.  BUT MY WIFE WAS SICK.
25          AND THAT QUALIFIES AS ACCEPTANCE?  NOT IN MY BOOK.
```

```
1            MS. CLARK:  I DO UNDERSTAND THAT MY -- I WAS NOT --
2    I'VE HAD SIGNIFICANT MEDICAL ISSUES OVER THE LAST FEW MONTHS.
3    I WAS NOT AT THE INTERVIEW.  I UNDERSTAND FROM SPEAKING WITH MY
4    COCOUNSEL AT TRIAL THAT HE ADVISED HIM NOT TO SPEAK ABOUT THE
5    OFFENSE.
6            THE COURT:  WHICH IS ALSO HIS PREROGATIVE.  I DON'T
7    EVEN HOLD THAT AGAINST HIM.  BUT AS I SAID, WE'RE IN A PERVERSE
8    SITUATION HERE.  WE'RE SAYING, WELL, LET'S INDULGE EVERY
9    POSSIBLE INFERENCE IN FAVOR OF HIM ACCEPTING RESPONSIBILITY.
10           BUT I DON'T SEE ANY ACCEPTANCE.  I SEE HIS REASON FOR
11   COMING, WHICH IS NOT A VALID REASON, OF COURSE, FOR A PERSON
12   WHO'S BEEN PUT OUT AS OFTEN AS HE HAS AND HAD SUFFERED FOUR
13   FELONY CONVICTIONS FOR THIS BEFOREHAND.
14           I MEAN, AT SOME POINT WE GOT TO SAY, THE LAW OF THE
15   UNITED STATES SAYS YOU CAN'T COME IN WITHOUT OUR PERMISSION.
16   RIGHT?  THAT'S FOR STARTERS.  AND, SECOND, WE'RE NOT GOING TO
17   LET PEOPLE IN WHO HAVE VIOLENT FELONIES AS THIS FELLOW DOES.
18   AND IN PARTICULAR, WE'RE NOT GOING TO COUNT IF THEY COME IN
19   EIGHT DAYS AFTER THEY'VE BEEN RELEASED FOR DOING -- WHAT DID HE
20   GET?  70 MONTHS FOR THIS VIOLENT FELONY.
21           I MEAN, HONESTLY, HIS ALLEGED CONCERN FOR HIS WIFE,
22   WHOM HE HASN'T SEEN IN PERSON FOR A LONG TIME, TRUMPS ALL OF
23   THAT?  I DON'T THINK SO.  NOT IN MY BOOK, IT DOESN'T.
24           MS. CLARK:  WITH REGARD TO THE 70 MONTHS, YOUR HONOR,
25   I'LL NOTE, MR. VASQUEZ DID DO THAT TIME.  THAT WAS HIS
```

```
 1    PUNISHMENT FOR COMMITTING THAT CRIME.  AND HE HAS NOT HAD ANY
 2    VIOLENT INSTANCES SINCE THEN.
 3              THE COURT:  WELL, I MEAN, LOOK HE'S BEEN -- YOU MEAN
 4    WHILE IN CUSTODY ON THIS CASE?
 5              MS. CLARK:  YES, YOUR HONOR.
 6              THE COURT:  BECAUSE HE GETS DEPORTED, AND THEN EIGHT
 7    DAYS LATER HE'S BACK.  SO I SUPPOSE THAT'S A START THAT HE
 8    HASN'T HIT ANYBODY WITH A LOCK AND A SOCK WHILE HE'S BEEN IN
 9    CUSTODY SINCE HIS ARREST HERE.
10              MS. CLARK:  OR FOR THE FIVE YEARS WHILE HE WAS DOING
11    THAT TIME.  SO IT HAS BEEN SEVERAL YEARS.  AND AGAIN --
12              THE COURT:  YEAH.
13              MS. CLARK:  -- ALTHOUGH --
14              THE COURT:  BUT, AGAIN, MS. CLARK, TO BE FAIR, IT
15    WASN'T THE FIRST TIME.  HE HAS A BATTERY CONVICTION BECAUSE HE
16    ASSAULTED ANOTHER PERSON WHILE IN CUSTODY ON AN EARLIER STATE
17    VIOLATION.  RIGHT?
18              MS. CLARK:  I DID SEE THAT IN THE PRESENTENCING
19    REPORT, YOUR HONOR.
20              THE COURT:  YEAH.
21              MS. CLARK:  I JUST BELIEVE, YOUR HONOR, THAT WHEN
22    PEOPLE ARE IN CUSTODY, THERE ARE DIFFERENT RULES SOMETIMES THAT
23    APPLY THAN WHAT WOULD HAPPEN ON THE --
24              THE COURT:  THAT MAY BE.  I MEAN, THAT'S ONE
25    INFERENCE.  THE OTHER IS THAT HE HAS VIOLENT PROCLIVITIES,
```

1   WHICH OF COURSE EXPLAINS WHY HE WOULD SLUG HIS WIFE IN THE FACE

2   IN THE PRESENCE OF THE KID.  THAT DIDN'T OCCUR IN CUSTODY.

3   THAT'S A COMPLETELY DIFFERENT CONTEXT.  THIS IS A VIOLENT GUY.

4           MS. CLARK:  I DON'T KNOW THAT "SLUG" IS THE RIGHT

5   WORD, YOUR HONOR.  AND THAT OCCURRED IN 2008.

6           THE COURT:  LET'S SEE.  REPORTED THAT HE HIT HER HARD

7   IN THE FACE.  I DON'T KNOW "SLUG," "SLAP."  HE HIT HER HARD IN

8   THE FACE.  CORROBORATED BY THE SON IN WHOSE PRESENCE THIS TOOK

9   PLACE.

10          MS. CLARK:  AND THAT HAPPENED IN 2008, THOUGH, YOUR

11  HONOR.

12          THE COURT:  RIGHT.  IT DID.  BUT YOU'RE SAYING, OH,

13  YOU KNOW, WELL, HE'S REFORMED NOW.  AND IT'S ALL SITUATIONAL.

14          IT DOESN'T SOUND SITUATIONAL TO ME.  IT SOUNDS LIKE

15  I'M DEALING WITH A VIOLENT GUY OR A GUY WHO HAS VIOLENT

16  PROCLIVITIES.

17          ANYWAY, THANK YOU.  I HAVE YOUR POSITION.

18          MR. DESHONG:  YOUR HONOR, BEFORE THE COURT PROCEEDS TO

19  COMPLETE THE RECORD ON ACCEPTANCE, I WOULD ALSO NOTE THAT THERE

20  WERE ARGUMENTS DURING CLOSING THAT HE WAS NOT THE PERSON

21  PORTRAYED IN THE PHOTOGRAPHS.  THE COURT MAY RECALL THE JURY

22  HAD A NOTE, ASKING TO SEE HIS TATTOOS TO ADDRESS THAT SPECIFIC

23  CONCERN.

24          THE COURT:  RIGHT.

25          MR. DESHONG:  I THINK THAT ARGUMENT BY DEFENSE COUNSEL

1    BROACHES THE LINE FROM HOLDING THE GOVERNMENT TO ITS BURDEN TO,

2    ESSENTIALLY, ARGUING FACTUAL INNOCENCE REGARDING AN ELEMENT OF

3    THE OFFENSE.

4        THE COURT:  OKAY.  AGAIN, THE PRESUMPTION OF

5    INNOCENCE, THE SIXTH AMENDMENT, OUR ENTIRE CONCEPT OF DUE

6    PROCESS GIVES ANYONE WHO IS ACCUSED OF A SERIOUS OFFENSE BY THE

7    GOVERNMENT THE RIGHT TO SAY "PROVE IT."  IT DOESN'T MATTER

8    WHETHER THE PERSON IS INNOCENT OR NOT.  "PROVE IT."

9        AND I RESPECT THAT.  I TRIED A LOT OF CASES AS A

10   LAWYER.  I NEVER TOOK IT PERSONALLY THAT A CRIMINAL DEFENDANT

11   INSISTED ON HIS RIGHT TO TRIAL.  SO THAT'S TO SAY, THERE'S NO

12   PENALTY HERE.

13       BUT WE'RE AT THE OPPOSITE END OF THE SPECTRUM.  I'M

14   NOW BEING ASKED TO CREDIT THAT HE SOMEHOW ACKNOWLEDGES, YOU

15   KNOW, A SINCERELY REMORSEFUL, CONTRITE FOR WHAT HE DID.  I

16   DON'T SEE ANY EVIDENCE OF THAT.  AND NOTHING THAT HAPPENED AT

17   THE TRIAL SUGGESTS THAT.  IF HE'D SUCCEEDED AT THE TRIAL, HE

18   WOULD HAVE GOTTEN AWAY WITH THIS.

19       SO I JUST DON'T SEE ANY BASIS FOR FINDING THAT THE

20   DEFENDANT'S ACCEPTED RESPONSIBILITY.  HE HAS NOT ACCEPTED

21   RESPONSIBILITY.

22       THE COURT FINDS AS FOLLOWS:  THE BASE OFFENSE LEVEL

23   HERE IS AN 8.  FOUR POINTS ARE ADDED BECAUSE HE HAS PRIOR

24   CONVICTIONS FOR THE SAME THING.  AND TEN POINTS ARE ADDED

25   BECAUSE HE HAS A POST-DEPORTATION CONVICTION FOR AN AGGRAVATED

1   FELONY WHICH, OF COURSE, IS THE ASSAULT OF A PRISONER WHILE HE

2   WAS IN CUSTODY.

3           BY THE WAY, DOING TIME, I THINK, FOR -- WELL, I DON'T

4   KNOW WHAT -- LET'S SEE, OH, HE WAS AT THE WASHOE DETENTION

5   CENTER.  I DIDN'T PICK UP ON THIS.

6           "AFTER BEING ARRESTED FOR DOMESTIC VIOLENCE AGAIN IN

7   TWO THOUSAND" -- "JULY 19, 2000.  CONFIRMED HIS IDENTITY.  WAS

8   A DEPORTED ALIEN."

9           APPARENTLY --

10          MS. CLARK:  THIS 70-MONTH SENTENCE OCCURRED IN 2015.

11  AND HE WAS IN CUSTODY FOR A 1326.

12          THE COURT:  OKAY.  ALL RIGHT.  SO WHILE HE WAS IN

13  CUSTODY ON THE 1336, THE FOURTH ONE, THE ASSAULT ON ANOTHER

14  PRISONER TOOK PLACE.

15          MS. CLARK:  ACCORDING TO THE PROBATION REPORT.

16          THE COURT:  ALL RIGHT.  IN ANY EVENT, THAT ADDS TEN.

17  SO THE ADJUSTED UPWARD OFFENSE LEVEL IS 22.  THE COURT, FOR

18  REASONS I'VE EXPRESSED, DOES NOT FIND THAT THE DEFENDANT HAS

19  ACCEPTED RESPONSIBILITY.  I AWARD NO POINTS FOR THAT.  HE'S IN

20  CATEGORY 5.  AND HIS GUIDELINES ARE 77 TO 96 MONTHS.

21          I'LL KEEP THAT IN MIND AS I TURN TO THE 3553 FACTORS.

22  I THINK, HERE, THIS IS AN AGGRAVATED CASE.  AS I SAID, THIS IS

23  THE FIFTH TIME THE DEFENDANT HAS BEEN CONVICTED OF THIS.  HE

24  HAS -- AT LEAST AS NOTED, PERHAPS THERE ARE MORE, BUT SEVEN

25  DEPORTATIONS AND TWO VOLUNTARY RETURNS ARE NOTED HERE.  HE HAS

1    BEEN IN TROUBLE.  IT APPEARS HE'S NEVER HAD STATUS IN THE

2    UNITED STATES.

3         IN OTHER WORDS, HIS PRESENCE HERE HAS ALWAYS BEEN

4    CONTRARY TO THE LAW OF THE UNITED STATES.  HASN'T HAD

5    PERMISSION FROM THE UNITED STATES GOVERNMENT.  BUT HE'S BEEN

6    HERE SINCE -- AS EARLY AS 1993.  AND ALL THAT TIME HE'S BEEN

7    COMMITTING OFFENSES.

8         HE HAS AN OFFENSE OUT OF THE RENO JUSTICE COURT THAT

9    STARTS IN '93.  AND, AGAIN, I'M NOT PLACING GREAT WEIGHT ON THE

10   CONVICTIONS THEMSELVES.  BUT IT'S JUST THE SHEER NUMBER OF THEM

11   AND HOW REPETITIVE HIS CRIMINAL CONDUCT IS.

12        CARRYING A CONCEALED WEAPON IN 1993.  POSSESSING A

13   DRUG.  I CAN'T TELL WHETHER THAT'S A FELONY OR A MISDEMEANOR.

14   YOU GOT A SIX-MONTH SENTENCE, WHICH WAS SUSPENDED.  THAT'S IN

15   '94.

16        ATTEMPTED BURGLARY AS A FELONY IN '94.  THEN THE

17   COUNTDOWN ON THE 1326 OFFENSES START IN 1997.  SENTENCED TO

18   18 MONTHS FOR BEING IN THE UNITED STATES AFTER BEING DEPORTED.

19   1999, HE'S BACK.  AND THIS IS THE FIRST DOMESTIC VIOLENCE

20   CONVICTION INVOLVING HIS WIFE.  HE'S BACK IN 2000.

21        THE JUDGE IN THAT CASE IN NEVADA IMPOSED A PRETTY

22   SUBSTANTIAL SENTENCE.  I THINK GUIDELINES WERE STILL MANDATORY

23   AT THIS TIME.

24        WERE THEY NOT, MS. CLARK?

25        MS. CLARK:  IN --

1        THE COURT:  HAD BOOKER BEEN DECIDED BY 2000?

2        MS. CLARK:  I DON'T KNOW, YOUR HONOR.

3        MR. DESHONG:  2005, YOUR HONOR.

4        THE COURT:  YEAH.  OKAY.  HE'S SUBJECT TO MANDATORY

5   GUIDELINES.  AND I TAKE THAT INTO ACCOUNT IN ASSESSING THE

6   DIFFERENCE BETWEEN HIS FIRST 18-MONTH SENTENCE AND THE NEXT

7   ONE.  ALSO THE DOMESTIC VIOLENCE CONVICTION IN BETWEEN THOSE

8   TWO.

9        BUT HE GOT -- THE POINT IS HE GOT 72 MONTHS.  HE'S

10  BACK IN '08.  AND THIS IS THE CONVICTION WE'VE TALKED ABOUT

11  THAT INVOLVED, WHAT I SAID, "SLUGGING."  BUT PROBATION REPORT

12  SAYS HE HIT HIS WIFE HARD IN THE FACE IN FRONT OF THEIR KID.

13  ANOTHER DOMESTIC VIOLENCE.

14       HE'S PROSECUTED AGAIN FOR 1326 IN 2008.  THIS MUST

15  HAVE BEEN CONFUSING TO HIM BECAUSE AFTER SERVING A 72-MONTH

16  SENTENCE, THEY SAID, OH, WE'RE GOING TO FIX YOUR WAGON.  YOU'VE

17  BEEN CONVICTED OF THIS AGAIN.  21 MONTHS.

18       I DON'T KNOW WHAT I WOULD HAVE THOUGHT.  I WOULD HAVE

19  THOUGHT, MAN, THIS IS KIND OF NUTS, BUT --

20       MS. CLARK:  WELL, YOUR HONOR, THE GUIDELINE SAID --

21       THE COURT:  YEAH, BOOKER HADN'T COME IN.  GUIDELINES

22  WERE DIFFERENT AT THAT POINT.  IN 2008, HE'S CONVICTED OF

23  ANOTHER BATTERY.  HE'S IN JAIL.  HE BATTERS AN INMATE WHILE

24  HE'S IN THE WASHOE COUNTY JAIL.

25       2012, HE'S BACK WITH ANOTHER 1326 CONVICTION FOR WHICH

1    HE'S SENTENCED TO 27 MONTHS.  AND I'M TOLD THAT WHILE IN

2    CUSTODY ON THAT, HE IMPROVISED A FLAILING-TYPE WEAPON WITH

3    METAL PADLOCKS ATTACHED TO SOCKS.  AND HIM AND ANOTHER INMATE

4    BEAT AND KICKED A THIRD INMATE, WHO SUSTAINED SERIOUS BUT NOT

5    LIFE-THREATENING BRAIN INJURIES, CUTS, BRUISES TO HIS FACE AND

6    HEAD.  HE WAS SENTENCED FOR 70 MONTHS.  HE DID HIS TIME.

7    RELEASED IN 2020 AND DEPORTED IN OCTOBER OF 2020.

8            AND THEN WITHIN EIGHT DAYS, WITHIN EIGHT DAYS, HE'S

9    BACK AGAIN.  SO THOSE ARE THE CIRCUMSTANCES OF THE CASE.  THE

10   DEFENDANT SAYS, WELL, I WAS REALLY COMING BACK BECAUSE MY WIFE

11   WAS ILL.

12           I DON'T KNOW WHETHER THAT'S TRUE OR NOT.  I MEAN, ON

13   THE ONE HAND, HE SAID IT, AND I'LL TAKE IT AT FACE VALUE.  ON

14   THE OTHER HAND, THIS IS A FELLOW WHO HASN'T GIVEN, YOU KNOW,

15   REALLY A LOT OF RESPECT TO HIS WIFE.  IT'S CONCEDED THAT THE

16   RELATIONSHIP WAS LARGELY BY TELEPHONE.  HE'S IN TROUBLE ALL THE

17   TIME.

18           HE'S IN CUSTODY.  TWO INSTANCES IN THE PAST OF

19   DOMESTIC VIOLENCE WHERE SHE'S THE VICTIM.  ONE IN FRONT OF HIS

20   SON.  ALL OF THAT KIND OF RUNS COUNTER TO THIS PROFILE OF THE

21   DUTIFUL HUSBAND COMING BACK TO ATTEND TO HER MEDICAL CONDITION.

22           I NOTE ALSO, THE FELLOW SAYS, I DIDN'T WORK IN MEXICO.

23   AND HE HASN'T HAD WORK IN THE UNITED STATES FOR A LONG TIME.

24   SO THIS IS NOT A FELLOW, AT LEAST AS FAR AS I'M AWARE, WITH A

25   TRACK RECORD OF BEING EVEN FINANCIALLY SUPPORTIVE OF THE WIFE

1    OR THE FAMILY WHEN HE WAS NOT IN CUSTODY.

2            THAT'S WHAT I MAKE OF THAT.  IN TERMS OF --

3            MR. DESHONG:  EXCUSE ME, YOUR HONOR.  AND JUST --

4    MS. CLARK RAISED THAT THE DEFENDANT MAY BE ON SUPERVISED

5    RELEASE.  AND IN LOOKING AT THE PSR, IT DOESN'T LOOK LIKE HE

6    WAS CREDITED THE TWO CRIMINAL HISTORY POINTS FOR BEING UNDER

7    SUPERVISION.

8            SO THAT WOULD ACTUALLY PUSH HIM UP TO 14 POINTS AND IN

9    CATEGORY 6, IF APPLICABLE.  I WOULD JUST -- AND IT APPEARS

10   MS. CLARK IS CORRECT.  BECAUSE IN HIS PARAGRAPH 36, HE RECEIVED

11   THREE YEARS OF SUPERVISED RELEASE ON HIS 1326 CASE.  AND AS THE

12   COURT IS WELL AWARE, HE WAS ONLY RELEASED FROM CUSTODY EIGHT

13   DAYS BEFORE HIS ARREST.

14           SO HE WOULD -- HAD STILL BEEN ON SUPERVISED RELEASE AT

15   THE TIME OF THIS OFFENSE.

16           THE COURT:  DOES PROBATION AGREE THAT TWO POINTS WOULD

17   APPLY IF HE WAS ON SUPERVISED RELEASE AT THE TIME?

18           MS. PLATAS:  NO, YOUR HONOR.  HIS CONVICTION AT

19   PARAGRAPH 36, THE THREE YEARS BEGAN ON SEPTEMBER 30, 2015,

20   WHICH WOULD HAVE ENDED IN 2018.

21           THE COURT:  WAIT.  HOW CAN THAT BE?  I THINK THE

22   GOVERNMENT IS REFERRING, NOT TO THE 1326 CONVICTION, BUT TO THE

23   ASSAULT CONVICTION.

24           MS. PLATAS:  HE DID NOT RECEIVE SUPERVISED RELEASE ON

25   THAT CONVICTION.

1          THE COURT:  SO IT SOUNDS LIKE THAT'S NOT CORRECT,

2     THEN, MR. DESHONG.

3          MR. DESHONG:  OKAY.  SO MY APOLOGIES, YOUR HONOR,

4     SINCE MS. CLARK REFERENCED A POTENTIAL SUPERVISED RELEASE

5     VIOLATION.

6          THE COURT:  IT DOESN'T SOUND LIKE HE'S ON SUPERVISED

7     RELEASE.  SO HE CAN REST ASSURED HE DOESN'T FACE, WHAT, TWO

8     YEARS.  IS THAT WHAT YOU THOUGHT?

9          MS. CLARK:  YES, YOUR HONOR.

10          THE COURT:  OKAY.  ALL RIGHT.  THE COURT IS -- TAKES

11     INTO CONSIDERATION JUST PUNISHMENT.  PROMOTING RESPECT FOR THE

12     LAW AND DETERRENCE.  I THINK THOSE ARE PARTICULARLY IMPORTANT

13     CONSIDERATIONS HERE.  JUST PUNISHMENT CONTEMPLATES PROTECTING

14     THE PUBLIC.

15          THIS IS A FELLOW WITH VIOLENT PROCLIVITIES, IN MY

16     JUDGMENT.  AND THEY'RE NOT SITUATIONAL.  IT'S NOT JUST WHEN

17     HE'S IN CUSTODY.  THAT'S HAPPENED TWICE THAT HE'S BEEN

18     CONVICTED OF ASSAULT ON OTHER INMATES.  ONE VERY VIOLENT

19     ASSAULT, LIKE I SAID, WITH PUTTING LOCKS IN A SOCK.  AND WITH

20     ANOTHER PERSON, ATTACKING A THIRD PERSON AND CAUSING SERIOUS

21     INJURIES.

22          ENOUGH SO THAT THE JUDGE DETERMINED THAT A 70-MONTH

23     SENTENCE WAS JUSTIFIED AND REASONABLE TO ACCOUNT FOR THAT

24     CONDUCT.  BUT ALSO THESE OTHER, YOU KNOW, VIOLENCE WITH HIS

25     WIFE.  AND IT'S NOT LIKE IT HAS ENDED.  THE MOST RECENT

1    CONVICTION FOR WHICH HE'S DONE TIME WAS FOR THE ASSAULT ON THE

2    OTHER PRISONER WITH THE LOCK IN THE SOCK.  IT'S A PATTERN THAT

3    RUNS THROUGH THE --

4              (TELEPHONE INTERRUPTION.)

5              THE COURT:  CAN WE TURN THAT OFF, TISH?

6              THE CLERK:  YES.

7              THE COURT:  IT'S A PATTERN THAT RUNS THROUGH

8    MR. VASQUEZ'S HISTORY AND HIS CRIMINAL HISTORY, IN PARTICULAR.

9              I THINK HE'S A DANGEROUS PERSON TO BE HERE IN THE

10   UNITED STATES.  I THINK HE POSES A DANGER.  PERHAPS, YOU KNOW,

11   TO FAMILY MEMBERS BUT CERTAINLY TO OTHERS THAT -- WITH WHOM

12   HE'S IN CUSTODY.

13             I'M GLAD THERE HASN'T BEEN ANOTHER INCIDENT.  PERHAPS

14   HE WAS DETERRED BY THE 70-MONTH SENTENCE FROM ATTACKING ANOTHER

15   PRISONER.  BUT I'M NOT CONVINCED THAT HE'S NOT A VIOLENT GUY.

16   IN FACT, I THINK JUST THE OPPOSITE.  I THINK HE IS A VIOLENT

17   PERSON.

18             SO, AS I SAID, PROTECTING THE PUBLIC GOES IN PART, I

19   THINK, TO THE CONCEPT OF DETERRENCE, PROMOTING RESPECT FOR THE

20   LAW, AND EVEN JUST PUNISHMENT.  HE'S DONE 70 MONTHS BEFORE FOR

21   THIS OFFENSE.  NOW, YOU KNOW, THEN IT LOOKS LIKE THE GUY WITH A

22   BAD EKG AFTERWARDS BECAUSE IT GOES WAY DOWN, GOES BACK UP, GOES

23   WAY DOWN AGAIN.

24             AND I THINK THAT'S UNFORTUNATE BECAUSE I THINK IT

25   SENDS THE WRONG MESSAGE TO THE DEFENDANT.  THE MESSAGE OUGHT TO

1   BE, IF YOU CONTINUE TO DO THIS, YOU'RE GOING TO FACE STEEPER

2   AND STEEPER CONSEQUENCES EACH TIME THAT YOU DO THIS.  THE

3   SENTENCES ARE NOT GOING TO GO DOWN.  THEY'RE GOING TO GO UP IF

4   YOU KEEP COMING BACK HERE.

5        AND, HONESTLY, WITH ALL RESPECT TO YOU AND THE

6   CONDITION OF YOUR WIFE, WE DON'T CARE WHAT YOUR REASONS ARE.

7   YOU CANNOT COME IN.  YOU POSE A DANGER HERE.  YOU'VE BEEN

8   CONVICTED OF NUMEROUS FELONIES IN THIS COUNTRY.  NO

9   CIRCUMSTANCE THAT YOU FACE TRUMPS THE DANGER AND THE NECESSITY

10  OF YOU REMAINING OUTSIDE OF THE UNITED STATES.

11       YOU DO HAVE OTHER OPTIONS, BY THE WAY.  YOU COULD GET

12  A JOB IN MEXICO AND SEND MONEY HERE AND ASSIST YOUR WIFE IN

13  THAT WAY DURING HER ILLNESS.

14       SO I DON'T FIND THAT THAT IS A MITIGATING

15  CIRCUMSTANCE -- HIS EXPLANATION IS A MITIGATING CIRCUMSTANCE.

16  CERTAINLY, I DON'T FIND ANY BASIS FOR VARYING.  JUST PUNISHMENT

17  WOULD, AS I MENTIONED, SUGGEST THAT THE PUNISHMENT SHOULD BE

18  HIGHER THAN ONE THAT HE'S RECEIVED FOR, WHAT, THE SECOND TIME

19  WHEN HE WENT TO 70 MONTHS.

20       I UNDERSTAND THAT THAT WAS GUIDELINES DRIVEN.  AND I

21  HAVE AUTHORITY THAT THE GUIDELINES ARE ADVISORY HERE.  I DON'T

22  HAVE TO IMPOSE A SENTENCE WITHIN THEM.  BUT I DON'T SEE ANY

23  REASON TO IMPOSE A SENTENCE LESS THAN 70 MONTHS.  THE

24  GOVERNMENT IS AT 84 MONTHS.  I DON'T THINK THAT ADEQUATELY

25  TAKES INTO CONSIDERATION THE DANGER THE DEFENDANT POSES.  I

1    DON'T THINK IT ADEQUATELY TAKES INTO CONSIDERATION THE FACT

2    THAT HE CAME BACK WITHIN EIGHT DAYS OF BEING DEPORTED.

3         I DON'T THINK IT ADEQUATELY TAKES INTO CONSIDERATION

4    THE FACT THAT THIS IS NOW HIS FIFTH CONVICTION FOR THE SAME

5    THING.  FIFTH FELONY CONVICTION FOR THE SAME THING.  AND I

6    DON'T THINK IT ADEQUATELY TAKES INTO CONSIDERATION THE NUMBER

7    OF TIMES HE'S BEEN DEPORTED AND VOLUNTARILY RETURNED.

8         ALL OF THOSE THINGS -- JUST PUNISHMENT, PROMOTING

9    RESPECT FOR THE LAW, AND LET'S HOPE THAT HE'S DETERRED BY THIS

10   LONG SENTENCE, AND THAT, YOU KNOW, WHAT YOU HAVE SAID THAT HE'S

11   TOLD YOU REALLY IS ACCURATE, MS. CLARK.  THAT IS, THAT HE

12   DOESN'T WANT TO SPEND ANY MORE TIME IN CUSTODY AND WON'T COME

13   BACK.

14        THIS WILL LET HIM KNOW THAT IF HE COMES BACK AGAIN AND

15   HE'S IN FRONT OF ME, THE SENTENCE IS GOING TO BE LONGER, NOT

16   SHORTER.  THE COURT FINDS THAT 99 -- I'M SORRY -- A 96-MONTH

17   SENTENCE, THE HIGH END OF THE GUIDELINES, IS A REASONABLE

18   SENTENCE HERE.

19        IT'S FULLY WARRANTED BY THE FACTS AND CIRCUMSTANCES IN

20   THE CASE, THE DEFENDANT'S CRIMINAL RECORD, THE MANNER IN WHICH

21   THE CONVICTION OCCURRED HERE.  I IMPOSE 96 MONTHS.  I FIND THAT

22   SUPERVISED RELEASE WILL PROVIDE AN EXTRA MEASURE OF DETERRENCE

23   IN THIS CASE, AND IT'S WARRANTED.

24        I MEAN, LOOK WHAT'S HAPPENED HERE.  AS I SAID, THERE

25   WAS SOME CONCERN ABOUT WHETHER HE FACED TWO ADDITIONAL POINTS

1    AND WAS IN CRIMINAL -- HAD A CATEGORY 6, WHICH IS REALLY WHERE

2    HE BELONGS.  THE JUDGE CHOSE NOT TO IMPOSE SUPERVISED RELEASE

3    IN THAT CASE.

4          I WANT YOU TO KNOW, MR. VASQUEZ, IF YOU COME BACK

5    WITHIN THREE YEARS AFTER YOU COMPLETE THE CUSTODIAL SENTENCE,

6    YOU WILL FACE ADDITIONAL CONSEQUENCES FROM ME, REGARDLESS OF

7    WHAT THE GOVERNMENT CHOOSES TO DO.

8          I SET TWO AND ONLY TWO CONDITIONS, TISH, FOR

9    SUPERVISED RELEASE.  NO STANDARD CONDITIONS.  ANYTHING ELSE.

10   JUST THESE TWO.

11         DON'T COME BACK.  UNQUALIFIED DON'T COME BACK.  YOU

12   HAVE SEVEN -- AT LEAST SEVEN FELONY CONVICTIONS.  MAYBE MORE.

13   YOU'RE NOT ALLOWED BACK IN THE UNITED STATES.  TWO; DON'T

14   VIOLATE ANY OF THE UNITED STATES LAWS, STATE, FEDERAL, OR

15   LOCAL.

16         THE COURT IMPOSES NO FINES.  I DO IMPOSE $100 PENALTY

17   ASSESSMENT.

18         YOU HAVE THE RIGHT TO APPEAL, MR. VASQUEZ.  YOU CAN

19   APPEAL ANY ASPECT OF YOUR CASE.  THE TRIAL OF YOUR CASE, IF YOU

20   THINK ERRORS WERE MADE OR MOTIONS SHOULD HAVE BEEN GRANTED THAT

21   WEREN'T, YOU CAN APPEAL THAT.  YOU CAN ALSO APPEAL YOUR

22   SENTENCING TODAY IF YOU THINK THE SENTENCE IS TOO LONG OR I

23   MADE A MISTAKE IN ARRIVING AT THIS SENTENCE.  ALL OF THOSE

24   THINGS ARE APPEALABLE.

25         HERE'S WHAT YOU NEED TO KNOW.  YOU HAVE 14 DAYS FROM

1    TODAY'S DATE TO MAKE UP YOUR MIND.  AND IF YOU CHOOSE TO

2    APPEAL, YOU TELL MS. CLARK, AND SHE'LL FILE THE PAPER FOR YOU,

3    AND THAT WILL INITIATE THE APPEAL.

4           DO YOU UNDERSTAND YOUR RIGHT TO APPEAL?

5           THE DEFENDANT:  YES, I UNDERSTAND.

6           THE COURT:  MS. CLARK, ANYTHING ELSE?

7           MS. CLARK:  FIRST, YOUR HONOR, I'D LIKE TO MAKE A

8    PLACEMENT RECOMMENDATION FOR THE STATE OF NEVADA TO FACILITATE

9    FAMILY VISITATION.

10          THE COURT:  ALL RIGHT.  THE COURT WILL RECOMMEND THAT

11   HE BE HOUSED IN THE STATE OF NEVADA.

12          MS. CLARK:  AND, SECOND, YOUR HONOR, I DO OBJECT TO

13   THE SENTENCE IMPOSED.  I BELIEVE THE COURT SPECULATED WITH

14   REGARD TO THE NATURE OF HIS RELATIONSHIP WITH HIS WIFE,

15   INCLUDING THE SEVERITY OF THE PRIOR CONVICTIONS, AND THE --

16          THE COURT:  I DON'T KNOW WHAT YOU MAKE OF THAT.  I

17   MEAN, IT'S KIND OF HORRIFYING TO ME THAT A WOMAN GETS HIT HARD

18   IN THE FACE.  SO YOU'RE SAYING I SPECULATED AS TO THAT.  IT WAS

19   BLACK AND WHITE.  IT WAS NOT OBJECTED TO IN THE PRESENTENCE

20   REPORT.  YOU ACKNOWLEDGE THAT YOU KNEW ABOUT IT COMING IN.  YOU

21   DIDN'T SAY, WELL, IT REALLY DIDN'T HAPPEN LIKE THAT.

22          SO I DON'T UNDERSTAND THE BASIS FOR THAT OBJECTION.

23   BEING HIT HARD IN THE FACE BY A VIOLENT GUY -- A WOMAN BEING

24   HIT HARD IN THE FACE, THAT'S PRETTY EGREGIOUS, IN MY BOOK.

25          MS. CLARK:  AND, SECOND, YOUR HONOR, WITH REGARD TO

1    THE MITIGATION PROVIDED FOR HIS WIFE, I THINK THE COURT DID NOT

2    ADEQUATELY RESPOND TO THE NONFRIVOLOUS MITIGATION.

3            THE COURT:  YEAH.  OKAY.  LIKE I SAID, HIS VERSION OF

4    WHY HE'S COMING BACK IS QUITE DIFFERENT FROM WHAT HER ACTUAL

5    MEDICAL CONDITIONS ARE.  THAT'S THE DISTINCTION THAT I MADE.

6    AND THAT'S MY RESPONSE TO THAT.

7            ALL RIGHT.  THAT'S ALL.

8            MS. PLATAS:  YOUR HONOR, WAS THAT A THREE-YEAR TERM OF

9    SUPERVISED RELEASE?

10           THE COURT:  YES.

11           (THE PROCEEDINGS WERE CONCLUDED AT 10:44 A.M.)

12                              -OOO

13                  **C E R T I F I C A T E**

14           I, ABIGAIL TORRES, CERTIFY THAT I AM A DULY QUALIFIED
     AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED STATES
15   DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND ACCURATE
     TRANSCRIPT OF THE PROCEEDINGS AS TAKEN BY ME IN THE
16   ABOVE-ENTITLED MATTER ON FEBRUARY 22, 2022, AND THAT THE FORMAT
     USED COMPLIES WITH THE RULES AND REQUIREMENTS OF THE UNITED
17   STATES JUDICIAL CONFERENCE.

18
                             DATED:  APRIL 21, 2022
19                           /S/ ABIGAIL R. TORRES

20                           _____
                             ABIGAIL R. TORRES, CSR
                             CERTIFICATE NO. 13700
21                           U.S. OFFICIAL COURT REPORTER

22

23

24

25