```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5        Plaintiff,                  )  No. 20-CR-3445-LAB
                                      )
 6             v.                     )  March 17, 2021
                                      )
 7   MANUEL VASQUEZ-PEREZ,            )  9:12 a.m.
                                      )
 8        Defendant.                  )  San Diego, California
     _____)

 9

10                 TRANSCRIPT OF STATUS CONFERENCE
               BEFORE THE HONORABLE LARRY ALAN BURNS
11                 UNITED STATES DISTRICT JUDGE

12   APPEARANCES:

13   For the Plaintiff:      UNITED STATES ATTORNEYS OFFICE
                             By:  NICHOLAS HERNANDEZ, ESQ.
14                           880 Front Street
                             San Diego, California  92101
15
     For the Defendant:      FEDERAL DEFENDERS OF SAN DIEGO, INC.
16                           By:  LAUREN J. CLARK, ESQ.
                             225 Broadway
17                           San Diego, California  92101

18   Court Interpreter:      DANIEL NOVOA

19   Court Reporter:         CYNTHIA R. OTT, RDR, CRR
                             District Court Clerk's Office
20                           333 West Broadway, Suite 420
                             San Diego, California, 92101
21                           cynthia_ott@casd.uscourts.gov

22

23

24   Reported by Stenotype, Transcribed by Computer

25
```

1          SAN DIEGO, CALIFORNIA, MARCH 17, 2021, 9:12 A.M.

2                              * * * *

3          THE CLERK:  Calling number 2 on the calendar.

4    Mr. Wilson, if you could get the correctional officer.  Moving

5    on to the next case.

6          Calling number 2 on the calendar, 20-CR-3445, United

7    States of America versus Manuel Vasquez-Perez.

8          You can disconnect, Ms. Rabon.

9          MS. CLARK:  Good morning, Your Honor.  Lauren Clark,

10   Federal Defenders, for Mr. Vasquez-Perez.  He's in custody and

11   hopefully will be present momentarily.

12         THE COURT:  All right.  Good morning.

13         MR. HERNANDEZ:  And good morning, Your Honor.

14   Nicholas Hernandez, on behalf of the United States.

15         THE COURT:  Good morning, Mr. Hernandez.

16         Ms. Clark, is this Mr. Rodriguez in the screen now?

17         MS. CLARK:  Mr. Vasquez-Perez, Your Honor.

18         THE COURT:  I'm sorry, yeah, Mr. Vasquez-Perez, I

19   apologize, I read from the wrong -- does your client speak

20   English?

21         MS. CLARK:  He speaks Spanish, Your Honor.

22         THE COURT:  Okay.

23         THE CLERK:  He's on the phone with the interpreter.

24         THE COURT:  Good morning, Mr. Vasquez.

25         THE DEFENDANT:  Okay.  Good morning.

1            THE COURT:  Mr. Vasquez, your case is in front of me

2    today for me to resolve motions that your lawyer has brought on

3    your behalf.

4            Your lawyer, Ms. Clark, is here, the prosecutor is

5    here, and I'm here in court.  You have a right to be here, and

6    so we can postpone this, and bring you in at some time when I

7    can fit you in.  We've just started back with in-person

8    proceedings just recently.  We weren't having any in-person

9    proceedings at all because of the pandemic.  But the chief

10   judge of our court issued an order opening up in-person

11   proceedings again, but obviously, we have a large number of

12   people, a backlog, so it'll take some time to get your -- get

13   you in front of me, if that's what you want to do.  The

14   alternative is we can go forward today by video conference.  I

15   can see you, you can see me on your screen.  As I said, your

16   lawyer is here.  You'll be able to hear everything, but that's

17   your choice.

18           If you want to go forward today, we'll do it by video

19   conference.  If you want to postpone it, then I'll postpone

20   your case.  But you have to make that decision here before we

21   get started with video conference, if you want to go forward by

22   video.

23           THE DEFENDANT:  Okay, I just wanted to talk to my

24   attorney.  I wanted to know about how much time do they want to

25   give me, more or less.

1          THE COURT:  Well, you'll have to take to her in

2     private about that.  That's not a conversation that you should

3     have in my presence or in the presence of the prosecutor.

4          She'll be in touch with you.  Either she'll come over

5     and see you, or she'll call you, or you can call her.  But this

6     issue today doesn't have to do with that.  This just has to do

7     with some motions that she's brought, legal issues that she's

8     raised that she wants me to resolve that may affect whether

9     your case goes forward.

10          THE DEFENDANT:  Okay, yes, I understand.

11          THE COURT:  Do you want to go forward by video, then,

12     with this hearing today?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you concur in his decision --

15          MS. CLARK:  Yes, Your Honor.

16          THE COURT:  -- Ms. Clark?  The Court finds that the

17     defendant has consented to video proceedings for this motion

18     hearing.  It's authorized under the current order of the chief

19     judge and under the CARES Act.

20          Several motions have been brought by Ms. Clark on

21     behalf of Mr. Vasquez.  Let me deal first with easier ones.

22     What about discovery and preservation of evidence, Ms. Clark,

23     have you gotten all of the discovery that is typical in these

24     cases?

25          MS. CLARK:  Almost, Your Honor.  Mr. Hernandez and I

1    actually conferred before the hearing began.  We are still

2    missing tapes from the deportation proceedings.

3              THE COURT:  Okay.

4              MS. CLARK:  And Mr. Hernandez is doing follow-up

5    Henthorn inquiries.  But other than that, we've received, I

6    believe, everything.  But we've had an open line of

7    communication.  I don't anticipate disputes at this time.

8              THE COURT:  All right.  What needs to be preserved?

9    You've brought a motion to preserve evidence.

10             MS. CLARK:  The dispatch tapes, Your Honor, but they

11   have already been produced.

12             THE COURT:  Okay.  So the discovery, with the

13   exception of getting some deportation tapes, discovery is

14   complete?

15             MS. CLARK:  To my knowledge, yes, Your Honor.

16             THE COURT:  Okay.  That leaves -- I think the only

17   other motion is your motion to dismiss.  I have -- as the

18   government notes in its response, I've dealt with this motion

19   before.  This appears to be the same motion that was

20   brought -- has been brought at least twice in our court, and

21   once in front of me.

22             This is the motion to dismiss under Arlington Heights.

23   The gist is that there's an equal protection violation, that

24   the law is not being enforced the same, and that there may have

25   been some improper motive at the time the law was first

1    enacted, which was over a hundred years ago, right?

2           MS. CLARK:  Yes, Your Honor.  And I filed the motions

3    in the fall.  The motions hearing was originally a few months

4    before.  Obviously, it's been postponed because of COVID.  I

5    don't know that Your Honor had heard the motion at the time

6    that I filed it, but I do know that Your Honor has decided that

7    at this point.

8           THE COURT:  Yeah, I have.

9           Do you have anything else to offer on this?

10           MS. CLARK:  No, Your Honor.  Not today.

11           THE COURT:  Okay.  Have you seen the transcript from

12    the case where -- let's see, it was Ms. Lopez, and then another

13    lawyer from your office, Ms. Hartzler.  And we had an extended

14    hearing.  And they both made all the arguments in favor of this

15    motion, and I've ruled on it.

16           And my inclination, at this point -- I've studied that

17    transcript -- is to rule the same way.  The motion is the same.

18    The only thing that's different is it's a different defendant

19    who's come in through the southern border, according to the

20    government.

21           But if you have nothing to add, then let me ask the

22    government, Mr. Hernandez, anything more on this?

23           MR. HERNANDEZ:  No, Your Honor, we would recite some

24    of the same arguments.

25           THE COURT:  Is the earlier case -- I may have had the

```
 1    first case where this was raised, I'm not sure of that.  And
 2    the reason I got Mr. Vasquez's name wrong is I was looking at
 3    the transcript from that earlier case, Rodriguez-Barios.  Is
 4    that on appeal on this issue?
 5              MS. CLARK:  I believe so, Your Honor.  And I
 6    understand the Court -- I believe the Court also heard it in
 7    Martin-Gonzalez.
 8              THE COURT:  Okay.  So I've heard it twice, then, okay.
 9    Have other judges heard this, too?
10              MS. CLARK:  Judge Battaglia did, Your Honor.
11              THE COURT:  Did anybody grant the motion?
12              MS. CLARK:  Judge Battaglia denied the motion as well,
13    Your Honor.
14              THE COURT:  Are they all on appeal now?
15              MS. CLARK:  I believe so, Your Honor.
16              THE COURT:  Okay.  Well, have you studied the
17    transcript, too, of the prior rulings and the argument?
18              MS. CLARK:  I listened to the argument before Judge
19    Battaglia, Your Honor, and I also have seen the transcript.
20              THE COURT:  Mr. Hernandez, have you?
21              MR. HERNANDEZ:  Yes, I was reading it this morning.
22              THE COURT:  All right.  Well, consistent with the
23    Court's rulings in at least one other case, maybe two, I deny
24    the motion.  First, I agree with the government that this is a
25    rational basis test, and I do find that the Congress had a
```

1    rational basis for legislating as it did in this case.

2            The government's position is that having ruled that

3    way, I don't need to get to discriminatory intent or disparate

4    impact, but let me say a couple of words about that.  And this

5    mimics what I said before.  You know, this is the busiest

6    border, there's no parallel between the number of 1326 offenses

7    that are filed here and are filed, for example, in Montana or

8    Washington or some other place that borders Canada.

9            We just don't have the number of people coming in

10   south as we do coming in to the country from the north.  And

11   the government has no control over who comes across the border.

12   You know, they're trying to catch everybody.  They haven't

13   said, well, we're only going to prosecute Hispanic people, or

14   people from Mexico, people from Central America.

15           And as I mentioned in the transcript, my experience

16   is, boy, you know, we get whatever comes through the filter

17   there, whatever they catch.  And a lot of times it's people

18   from China.  It's people from other exotic places, but it's not

19   as if the government has any control over who's coming in, and

20   from where.  And so I don't find that there's any disparate

21   impact here or any discriminatory intent.

22           The government is trying to stop all comers, I think,

23   at least they have been.  I don't know if it's still happening

24   like that now, but they were trying to stop all comers from

25   coming in, and they had -- they had no say in who came across.

 1         So even if we got to the second level of inquiry about
 2    disparate impact and discriminatory intent, I would find there
 3    is no discriminatory intent.  The government's stuck with the
 4    demographic that comes across, and they have no control over
 5    that.  And the disparity there is not owing to any government
 6    policy or any enforcement policy or any intent to discriminate
 7    on the part of any -- anybody, whether in the legislature or
 8    the executive branch, as I see it.  So I just don't find a
 9    basis for this.
10         As I said, number one, I find there was a rational
11    basis for Congress at the time to make the decisions it did,
12    and to require an organized process for people to come into the
13    United States, where, you know, my goodness, we have a say in
14    who comes in, we get to say, yeah, you get to come in or you
15    don't.  That seems entirely rational to me for any country.
16    And second, as I said, I've already made the record on
17    disparate impact, discriminatory intent.  So those are my
18    rulings.
19         Essentially, I incorporate all of what I said in U.S.
20    versus Manuel Rodriguez-Barios, which was 20-CR-1684.  Both
21    parties have indicated familiarity with that either by
22    listening to the tape, or studying the transcript of that.  So
23    my ruling would be, same issue, same ruling.  So the motion is
24    denied.
25         What's left, just a trial date, then?

1          MS. CLARK:  No, Your Honor, I had filed a cursory

2   motion to dismiss under 1326(d).

3          THE COURT:  Oh, that's right, yeah.

4          MS. CLARK:  I don't have the tapes from the

5   deportation proceedings.

6          THE COURT:  But it's not supported at all.  You don't

7   have anything, you don't point to anything and say, well,

8   here's the problem.

9          MS. CLARK:  I requested leave to file that motion

10   later, when I receive the tapes from the deportation

11   proceedings.

12          THE COURT:  Okay.  I mean, it presupposes that there

13   is some basis for it.  There may not be any basis for it, but

14   we'll leave that for another day.

15          MR. HERNANDEZ:  Your Honor, I could speak to that, the

16   1326 motion.  So we actually proactively researched the

17   previous deportations.  And this defendant has received

18   multiple IJ hearings and removals.  And in 1996, he received

19   voluntary departure.

20          He thereafter had a deportation in 1997, so he would

21   not have been granted that relief anew.  So based upon my

22   review of the defendant's deportation history, his 1997

23   immigration proceeding before the immigration judge is valid

24   and is --

25          THE COURT:  If Ms. Clark agrees with you, we won't get

1    a motion, right?

2            Okay.  Look --

3            MS. CLARK:  Your Honor, could I file that with motions

4    in limine, then?

5            THE COURT:  Well, I think, you know, given that you

6    haven't found anything to this point, and the representation --

7    yeah, you can file it, I suppose, with motions in limine.

8            I'm not prepared to set that date yet.

9    Here's -- here's where we're at, and I say this for

10   Mr. Vasquez's benefit mostly, because he's the affected person.

11           Mr. Vasquez, we have a big back-up of cases that need

12   to be tried.  And yours is one of them.  And I'm prioritizing

13   cases where people are being held in custody like you, so

14   you're at the front of the line, in terms of cases to be tried.

15           The problem is we're still going slow now.  We just

16   opened up, as I told you, to in-person proceedings.  We can

17   only try three cases a week, in our whole court complex.  We

18   have two different courthouses here with lots of judges, but

19   because of the problem with COVID, and people still very

20   concerned about being infected, we can only bring three juries

21   in.

22           You know, the jury is a lot bigger than just the 12

23   people that will hear your case.  The pool from which we pick

24   those 12 people usually is, you know, 36 to 40 people.  So

25   we're keeping people separated.  They've got to wear masks.

```
1    It's just much more complicated.  I don't bring them into my
2    courtroom here, as I usually do when we don't have a pandemic,
3    and pick the jury.
4            So in other words, a lot of judges competing for time
5    slots to try cases.  Our chief judge has determined that only
6    cases that will take a day or two or three days can go, no long
7    cases.  Well, yours fits into that category, and you're in
8    custody, so you'd be a priority case.  But I have to get in
9    line with these other judges, because only one case a week
10   where somebody is in custody can be tried.  We can try two
11   other cases, civil or criminal, if the person is not in
12   custody, but only one case a week where somebody's in custody.
13           So you can imagine, there's a big back-up of cases.
14   All that said, I'm going to try to get your case to trial as
15   quickly as possible.  And let's hope things open up and maybe
16   we can try more than three cases a week.  I'm hopeful for that.
17           At this point, I have to get in line.  I don't know
18   when the next slot is.  So I'm going to set your case over for
19   a trial setting day.  That is a day when I'll have clarity.
20   I'll check with the clerk's office.  I'll get on the list.
21   Make sure I have two or three days to try a case, and then
22   we'll set your case on that day.
23           It shouldn't be too much longer.  I know, as I said,
24   you've been in custody.  I'm mindful of that.  I know you want
25   your day in court, but I'm going to set a date now for us to
```

1    come back, and then we'll set your trial date on that date.  By

2    then, I'll have greater understanding of what dates are

3    available and when we can do this.

4           In the meantime, I know you're concerned about talking

5    to your lawyer about what the offer is and so on.  Ms. Clark

6    will be in touch with you, so you won't just be left to wait to

7    hear from me again.  She'll be in touch with you to answer the

8    questions that you raised at the beginning.

9           Tish, I think, realistically, set this out for the

10   beginning of May --

11          THE CLERK:  May, sure.

12          THE COURT:  -- for trial setting, and we'll try to get

13   a date real close in time.

14          What I'm going to say, Ms. Clark and Mr. Hernandez, is

15   begin preparing because it may be that I'll give you a date a

16   week or two after the trial setting date, when we'll actually

17   convene and try the case.

18          I just don't know.  If I was a soothsayer, I could

19   tell you exactly what the date is today, but I don't know what

20   the availability is.  We have to coordinate it all through the

21   clerk's office.

22          (Discussion off the record.)

23          THE COURT:  So we'll set a trial setting date in May.

24   The Court finds that the orders in place finding excludable

25   time under the Speedy Trial Act pursuant to Judge

 1   Sabraw's -- Chief Judge Sabraw's order and under the emergency

 2   provisions are still in place, and so time is tolled.

 3          May 3rd at 2:00, is that a convenient date, Ms. Clark?

 4          MS. CLARK:  I'm scheduled to be on preplanned leave

 5   out of the District that week.  I wonder if we could schedule

 6   it for --

 7          THE COURT:  Sure.  When do you get back?

 8          MS. CLARK:  Just that first week in May.

 9          THE COURT:  The 10th?  Tish, is the 10th a Monday,

10   too?  How about May 10th, then, at 2:00?

11          MS. CLARK:  I'm available then.  Your Honor, I

12   apologize.

13          THE COURT:  Go ahead.

14          MS. CLARK:  There was another motion to dismiss, but I

15   understand we can resolve the trial setting date first.

16          THE COURT:  Okay.  Does May 10th work for you?

17          MR. HERNANDEZ:  May 10th is fine for the United

18   States.

19          THE COURT:  I'm sorry, I saw the 1326(d), which wasn't

20   developed.  It was just in there.  And then the Arlington

21   Heights.  What was the third motion to dismiss?

22          MS. CLARK:  There was a motion to dismiss, that 1326

23   was unconstitutional under the Fifth and Sixth Amendments, as

24   the order of deportation by an immigration judge is not -- the

25   factual findings of that is not reviewed by a jury in a

1   criminal trial.

2            THE COURT:  Okay.  Mr. Hernandez, do you want to

3   comment on that?

4            MR. HERNANDEZ:  Yes, the United States did respond to

5   that, and I think these arguments --

6            THE COURT:  Either that or pull your mask off for now.

7            MR. HERNANDEZ:  Yes, Your Honor.

8            Yes, we responded to that portion of the defendant's

9   motion, and find that it's without merit.  Essentially, it

10  seemed like an argument that belies 1326(d) in its entirety,

11  arguing that the implementation or incorporation of an

12  administrative decision into the elements of 1326 is

13  unreviewable and subject to unfettered, unreviewable

14  discretion.

15           But, in fact, that's what 1326(d)'s purpose is, is to

16  allow for judicial review.  So I can go into more detail, but

17  it's the United States' position that the argument is without

18  merit.

19           THE COURT:  I take his point on that, Ms. Clark, why

20  don't you have judicial review?  You're able to collaterally

21  attack actions that were taken, what, in this case, he's

22  talking about a '97 deportation.

23           It just seems really out of the ordinary and generous

24  that Congress would say, oh, yeah, something that happened 23

25  years ago, you can attack again.  Ordinarily, the legislation

1   is opposite that, and the Courts shun going back into, you

2   know, real old cases and re-examining old cases.  But 1326(d),

3   as Mr. Hernandez mentions, gives you that opportunity.  Why

4   isn't that due process, and the opportunity to challenge

5   anything that contributes toward the conviction?

6          MS. CLARK:  Your Honor, under Apprendi, the jury makes

7   the determination of factual findings --

8          THE COURT:  Right.

9          MS. CLARK:  -- when it comes to an element of a

10   criminal charge.

11          THE COURT:  Yeah, but that's the fact of a

12   deportation.  That's what the element is here, right?  They've

13   got to prove the fact of a deportation, not underlying facts

14   that support the deportation.  That would be to retry

15   deportations every time that it comes up.

16          MS. CLARK:  But the order of deportation itself, Your

17   Honor, is predicated on certain factual findings by an

18   immigration judge.

19          THE COURT:  Maybe, or maybe an admission by the

20   defendant, too.  Most of them are by admissions, right?

21          MS. CLARK:  Sometimes, Your Honor, but not always.  In

22   this case, we do have a hearing before an immigration judge.

23   We don't know what happened at that hearing.

24          THE COURT:  So what do you envision?  I mean, do you

25   envision that they would have to come in and establish the

1  basis on which the defendant was deported 24 years ago again in

2  front of a jury to convict him of coming in after being

3  deported?

4          MS. CLARK:  Yes, Your Honor, I think the jury should

5  make factual findings --

6          THE COURT:  Oh, yeah, it's too much.

7          MS. CLARK:  -- with regard to the deportation, that

8  immigration judges, Your Honor, have almost unfettered

9  discretion when it comes to ordering deportations.  And I cited

10 in my briefing a study by Syracuse University that talked about

11 the percentage of certain immigration judges when it comes to

12 granting or denying an asylum application over a six-year

13 period of time.

14         THE COURT:  But there's recourse, right?  They're not

15 the last say.  Somebody can appeal the deportation, right?

16         MS. CLARK:  Sometimes, Your Honor, and other times an

17 appeal is expressly forbidden by statute.  And so we're talking

18 here about an issue of fact that the legislators essentially

19 delegated to administrative agencies.  And then that

20 administrative decision is presented to the jury and relied

21 upon as fact.

22         THE COURT:  Well, okay.  I disagree with the last part

23 of it.

24         What's presented to the jury is a finding that a

25 person has been deported, and it doesn't open up all of the

1    contested grounds for the deportation.  It's a final

2    determination.  And even that, I mean, to say it's final, as I

3    said, you have a chance to attack it before the case ever gets

4    to a jury.

5         In fact, you know, you've tried to preserve that here

6    by saying, well, I may have to bring a 1326(d) motion, so it's

7    an opportunity to preserve any argument that there are defects

8    in the deportation proceeding in front of a judge before it

9    gets to the jury.

10        It's a preliminary issue that a judge would decide.

11   And then like many things in jury trials, the jury decides the

12   ultimate facts, it's the element of the crime.  So I don't find

13   that there's any deprivation of due process in that.  And

14   Congress specifically intended for it to happen that way.

15        And the other aspect of this is we have millions of

16   cases that are invalid if the argument is true.  1326 has been

17   in effect for as long as I've been here, you know, 35 years or

18   something.  And many people have pled, many people have been

19   convicted.  And if what you're saying is true, all of those

20   would be invalidated by that argument.  The motion is denied.

21   See you on May 10th at 2:00.

22        Yeah, reciprocal discovery by the government is

23   granted.  The defense is ordered to produce to the government,

24   to Mr. Hernandez anything that they intend to use that falls

25   under that provision of Rule 16.

1          MR. HERNANDEZ:  And, Your Honor, I apologize, I think

2   the United States also had a motion for fingerprint exemplars

3   in this matter.

4          THE COURT:  Yeah, I don't know.  Are you willing to

5   allow them to use booking or arrest prints for comparison

6   purposes?

7          MS. CLARK:  I'll speak with Mr. Vasquez-Perez about

8   that, Your Honor.

9          THE COURT:  All right.  Well, I'll grant it,

10  conditionally.  If they allow you to -- or if Ms. Clark says,

11  look, you can go ahead and use his booking prints or his arrest

12  prints, then you don't need to fingerprint him again.

13          Otherwise, go ahead.

14          MR. HERNANDEZ:  All right.  And assuming that she does

15  permit the United States to use those booking fingerprints, it

16  would be a stipulation that those are, in fact, his prints

17  or --

18          THE COURT:  Yeah, that's all she's admitting, not that

19  they match.

20          MR. HERNANDEZ:  Sure.

21          THE COURT:  But just that, you know, those -- they're

22  authentic.  That the prints taken at the time of his arrest or

23  at the time of his booking do belong to him.

24          MR. HERNANDEZ:  Okay.

25          THE COURT:  Okay.  That's all.

1              (The proceedings concluded at 9:36 a.m., March 17,

2    2021.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    COURT REPORTER'S CERTIFICATE

2

3        I, CYNTHIA R. OTT, Official Court Reporter, United States

4   District Court, Southern District of California, do hereby

5   certify that pursuant to 28 U.S.C. §753 the foregoing is a

6   true, complete and correct transcript of the stenographically

7   reported proceedings had in connection with the above-entitled

8   matter and that the transcript page format is in conformance

9   with the regulations of the Judicial Conference of the United

10  States.

11

12        DATED at San Diego, California, April 22, 2022.

13

14                           /s/ CYNTHIA R. OTT
                          CYNTHIA R. OTT, RDR, CRR
15

16

17

18

19

20

21

22

23

24

25
```